IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. JARAMILLO,

    Plaintiff,

vs.                                                   No. CIV 11-906-JB/ACT

MICHAEL J. ASTURE,
COMMISSIONER OF SSA,

    Defendant(s).

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**THIS MATTER** comes before the Undersigned on the Order of Reference by the Honorable Judge James O. Browning [Doc. 14] filed on February 16, 2012, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. The Court has directed the Undersigned to submit an analysis, including findings of fact, if necessary, and recommend disposition. Accordingly, the Undersigned submits the following:

1. Plaintiff Joseph A. Jaramillo ("Jaramillo") filed Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 20] and Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision [Doc. 21] (collectively "Motion") on May 24, 2012. Defendant Michael J. Astrue, the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), filed his Response to Plaintiff's Motion to Reverse or Remand [Doc. 22] ("Response") on July 25, 2012.  Jaramillo filed his Reply Memorandum in

---

[1] The parties will be given the opportunity to object to the Report and Recommendation as described in 28 U.S.C. § 636(b)(1). Objections must be filed within fourteen (14) days after being served with a copy of the Report and Recommendation. A party waives the right to challenge the Magistrate Judge's Report and Recommendation if the party does not file timely and specific objections.

Support of Motion to Reverse or Remand Administrative Agency Decision [Doc. 23] ("Reply") on August 8, 2012. Having considered the Motion, the memoranda submitted by the parties, the administrative record, and the applicable law, the Undersigned finds that the Motion is well taken and recommends that it be GRANTED.

## I. PROCEDURAL RECORD

2. On June 12, 2008, Jaramillo filed an application for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act,  42 U.S.C. §§ 401 – 433, alleging disability beginning March 15, 2007. [Tr. 189, 192.]  The claims were initially denied on July 30, 2008, and denied again upon reconsideration on September 23, 2008.  [Tr. 60-63, 67-69.] Thereafter, Jaramillo filed a written request for hearing on October 8, 2008.  [Tr. 72-73.]

3. On May 20, 2010, Larry C. Marcy, Administrative Law Judge ("ALJ") conducted a hearing. [Tr. 11.] At the hearing, Jaramillo was represented by Attorney Helen L. Lopez.  [Tr. 11.] On June 24, 2010, the ALJ issued an unfavorable decision.  [Tr. 11 – 20.]  In his decision, the ALJ found that Jaramillo met the insured status requirements of the Social Security Act through December 31, 2012; that he had not engaged in substantial gainful activity since March 15, 2007, the alleged onset date; and that Jaramillo has severe impairments consisting of left shoulder pain, back disorders, asthma, right hand pain, and depression. [Tr. 13.] However, the ALJ found that Jaramillo was not disabled at step three of the sequential evaluation process. Specifically, the ALJ found that Jaramillo "does not have an impairment of combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 13.]

4. On June 24, 2010, Jaramillo requested that the Appeals Counsel review the ALJ's decision. [Tr. 1.] This request was denied on August 12, 2011, and, therefore, became the final decision of the Commissioner. [Tr. 1 – 5.] 20 C.F.R. §§ 404.981. On October 11, 2011, Jaramillo filed his Complaint for judicial review of the ALJ's decision. [Doc. 1.] Jaramillo's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2012, thus, Jaramillo must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. [Tr. 11.]

## II. STANDARD OF REVIEW

5. Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U. S. C. § 423(d)(2)(A). In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2] Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C.

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 D.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without

§ 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*., quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (quotation omitted). In this case, the decision was not supported by substantial evidence and the ALJ did not apply the correct legal standards.

### III. MEDICAL HISTORY

6. Jaramillo was 32 years old at the time he applied for SSI and DIB and was 33 years old on the date the ALJ issued his unfavorable decision. [TR. 20, 189.] In applying for benefits, Jaramillo stated he "became unable to work due to my disabling condition on March 15, 2007." [Tr. 192.] The ALJ found that Jaramillo had severe impairments including asthma, left shoulder pain and back disorders, depression, and right hand pain. [Tr. 13.] Although Jaramillo has also been diagnosed with post-traumatic stress disorder ("PTSD"), the ALJ made no finding regarding PTSD or any anxiety disorder. [Tr. 283, 334.] The following represents Jaramillo's medical history prior to the date he was last insured (December 31, 2012).

---

further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

### A. Asthma

7. According to Jaramillo, he was diagnosed with asthma in 1994. [Tr. 283.] Jaramillo treats his asthma with albuterol[3] and is able to continue his usual activities when he uses an inhaler. [Tr. 253-54.] Jaramillo's asthma has not required any hospitalization or emergency room visits. [Tr. 253.]

### B. Left Shoulder Injury

8. Jaramillo is right handed. [Tr. 40, 51.] Jaramillo suffered a gunshot wound to his left shoulder in 1995. [Tr. 33 - 34.] Jaramillo reports that he had approximately 14 surgeries related to the gunshot injury all of which took place within two months after the injury. [Tr. 283, 308.] While there are no medical records available with regard to treatment for the gunshot wound [Tr. 283], Jaramillo's subsequent medical exams are replete with reference to the injuries suffered due to the gunshot. For example, when Jaramillo was seen at Las Vegas Clinic to establish care in June of 2008, healthcare providers noted the deformity of his left shoulder and reduced use of the left arm. [Tr. 318 – 319.] In July of 2008, Jaramillo was seen by Dr. Nickerson[4] who observed "abnormalities of the [left] shoulder" such that Jaramillo "is able to shrug his shoulders, but there is limited range of motion of the left shoulder . . . ." [Tr. 309.] In March of 2010, an MRI scan showed a "resection of the humeral head on the left. There is distortion of the normal anatomy and . . . atrophic changes involving the supraspinatus and infraspinatus musculature. Even the teres minor is quite atrophic as well. There is degenerative arthritic

---

[3]Albuterol is used to prevent and treat wheezing, shortness of breath, coughing, and chest tightness caused by lung diseases such as asthma and chronic obstructive pulmonary disease (COPD; a group of diseases that affect the lungs and airways). Albuterol inhalation aerosol is also used to prevent breathing difficulties during exercise. Albuterol is in a class of medications called bronchodilators. It works by relaxing and opening air passages to the lungs to make breathing easier. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682145.html.

[4] Dr. N.D. Nickerson is not a treating physician but performed a Physical Residual Functional Capacity Assessment on Jaramillo for the Disability Determination Services for the State of New Mexico. [Tr. 307 – 314.]

change in the region of the shoulder joint and there is some fragmentation of bone." [Tr. 344.] [5]

As Jaramillo describes, "I don't have a shoulder socket at all." [Tr. 33.]

9. In 2008, Jaramillo's healthcare provider noted that "Though he does have reduced use of the left arm, he does not have other medical problems that would prevent him from working." [Tr. 319.] In 2010, another healthcare provider, Dr. Forno, notes, "[Jaramillo] is unable to abduct his arm really at all . . . he really has no passive range of motion of his shoulder except for a jog of internal and external rotation." [Tr. 341] Jaramillo states he is unable to use his arm for anything other than picking up very small objects such as coins. [Tr. 34 – 36.]

10. Jaramillo testified that the day after the hearing he was scheduled for surgery to fuse the shoulder joint. [Tr. 38.] Jaramillo explained that it will help with the pain in his shoulder and back because "it won't just be hanging there." [Tr. 38.] Jaramillo underwent shoulder fusion surgery on May 21, 2010. [Tr. 346-48.] Following surgery, Jaramillo was provided with a list of his "Exertional Limitations" which advised that he: 1. Occasionally lift and/or carry (including upward pulling) less than 10 pounds; 2. Frequently lift and/or carry (including upward pulling) less than 10 pounds; 3. Stand and/or walk for a total of about 6 hours in an 8-hour workday; 4.



5 © 2010 WebMD, LLC. All rights reserved. The shoulder is one of the largest and most complex joints in the body. The shoulder joint is formed where the humerus (upper arm bone) fits into the scapula (shoulder blade), like a ball and socket. http://www.webmd.com/pain-management/picture-of-the-shoulder

Sit for a total of about 6 hours in an 8-hour workday; and 5. that his pushing or pulling would be limited in his upper extremities. [Tr. 349.] There is no indication of a limited timeframe for these exertional limitations. *Id.* The record does not reveal whether the fusion surgery improved Jaramillo's condition with regard to the use of his left arm. However, at the hearing, it was Jaramillo's understanding that after the surgery, he will have no mobility in his left shoulder. [Tr. 49.]

### C. Depression and PTSD

11. Jaramillo was diagnosed with PTSD and depression in June of 2008 and prescribed anti-depressants and medication to help him sleep. [Tr. 45, 324, 334 and 335.] Jaramillo has been depressed since he was shot in 1995. [Tr. 326.] He attended five treatment sessions for depression between June and August of 2008 at New Mexico Behavior Health ("NMBH"). [Tr. 323 – 338.] The health care provider at NMBH stated that Jaramillo's depression, probably associated to PTSD, is impacting his daily living. [Tr. 336.] Jaramillo explained that since his gunshot injury, he does not like to go out in public and has no social life. [Tr. 41, 43, 241.] During a Disability Determination Examination ("DDE") in July of 2008, the examiner noted that Jaramillo had a two month history of treatment for depression and PTSD causing a "lack of motivation and nightmares." [Tr. 283.] A psychiatric review of Jaramillo also done in June of 2008, diagnosed him with Major Depressive Disorder ("MDD") and PTSD. [Tr. 289, 291.] A Mental Residual Functional Capacity Assessment in July of 2008 found that Jaramillo was "moderately limited" in his ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors. [Tr. 304.] The evaluator commented that: "[Jaramillo] can understand, remember and carry out simple and complex instructions. He is able to interact superficially with the general public and co-

worker[s] and can adapt to routine changes in the workplace." [Tr. 304.] When asked about depression at the hearing, Jaramillo said it has been a problem for him since he got out of the hospital in 1996. [Tr. 41.] He said it affected his work because, "it got to the point where I don't like to be around a lot of people. I have, like, social anxiety . . . ." *Id*.

### C. Right hand

12. With regard to his right hand, Jaramillo reports that his hand was broken several times since 2001 resulting in surgery and a metal plate in his hand. [Tr. 318, 326.] Specifically, he has problems with the little and ring fingers. [Tr. 40.] At the hearing, Jaramillo explained he has problems closing his hand or trying to write. *Id*. The DDE notes a history of "boxer's fracture" to the right fourth metacarpal in 2004. [Tr. 283.] A physical residual functional capacity assessment notes that Jaramillo has adequate grip strength in both hands. [Tr. 309.]

## IV. DISCUSSION

13. Jaramillo claims that the ALJ made no assessment ascertaining whether or not he had a determinable anxiety-related disorder or the severity of the disorder [Doc. 21 at 5] and asserts that the ALJ committed error at Step Two of the sequential evaluation process by not assessing whether Jaramillo had a determinable mental impairment and not ruling on the severity of the impairment with regard to Jaramillo's PTSD/Anxiety-related disorder. [Doc. 21 at 3.]

14. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. *Stokes v. Astrue*, 274 F App'x. 675, 678 (10th Cir.2008) (citations and quotations omitted). The ALJ found that Jaramillo had a medically severe impairment or combination of impairments, but did not reference his PTSD/Anxiety-related disorder. [Tr. 13.] That failure, by itself, does not constitute reversible error. *Id.* Under the regulations, once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate

other disorders as severe at step two, because at later steps, the agency will consider the combined effect of all claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Barrett v. Astrue*, 340 Fed.Appx. 481, 484 (10th Cir.2009) (unpublished) (citing 20 C.F.R. § 404.1523 and 416.945(e)). After finding a severe impairment, the ALJ still has the task of determining the extent to which claimants' impairments restrict his ability to work. *Barrett*, 340 F. App'x at 484 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir.2007)).

15. The ALJ determined at step two that Jaramillo suffers from the severe impairments of left shoulder pain, back disorders, asthma, right hand pain, and depression. [Tr. 13.] The fact that the ALJ did not specifically mention PTSD/Anxiety disorder as one of Jaramillo's severe impairments does not constitute reversible err in and of itself.

16. However, when confronted with a claim of mental impairment, the ALJ is required by regulation to apply a "special technique." *Grotendorst v. Astrue*, 370 F. App'x 879, 882 (10th Cir. 2010) (citing 20 C.F.R. § 404.1520a). The special technique requires the ALJ to follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments ("Listings"). *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (citing *Cruse v. U.S. Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) and 20 C.F.R. § 416.920a(b)(1)). The Listings describe impairments that are considered severe enough to prevent an individual from performing any gainful activity regardless of his or her age, education or work experience. 20 C.F.R. §§ 404.1525(a), 416.920a, and 416.925(A). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990).

17. The first step in the technique is to "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)," *Grotendorst,* 370 F. App'x at 882 (10th Cir. 2010) (quoting § 404.1520a(b)(1)), and if so, specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment. *Wamsley v. Astrue* 780 F.Supp.2d 1180 (D.Colo.2011) (quoting 20 C.F.R. § 404.1520a). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Grotendorst*, 370 F. App'x at 882 (quoting § 404.1508).

18. Once the ALJ has determined that the claimant has a medically determinable mental impairment, they must then rate the degree of functional limitation resulting from the impairment(s) and record the findings. *Stokes,* 274 F. App'x at 680; 20 C.F.R. 404.1520a(b)(2). The ALJ evaluates four broad areas in which he rates the degree of functional limitation, including: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Stokes*, 274 F. App'x at 679 (10th Cir. 2008) (quoting 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (quotations omitted). If the ALJ rates the limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

19. The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. *Stokes*, 274 F. App'x at 679 (citing 20 C.F.R. §§ 404.1520a(d)(1–2), 416.920a(d)(1–2)). At the ALJ hearing level, "[t]he

decision must include a specific finding as to the degree of limitation in each of [those] functional areas." *Id.* (quoting §§ 404.1520a(e)(2), 416.920a(e)(2)). The Listings subsections applying to mental disorders enumerate criteria that guide the ALJ through the special technique for a given disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 12.02 – 12.08.

20. As discussed above, the ALJ did not rate Jaramillo's PTSD/Anxiety disorder in step two. In step three, the ALJ evaluated Jaramillo's "mental impairment" by using the criteria of Listing 12.04.[6] [Tr. 14.] Listing 12.04 applies to "Affective Disorders." Affective Disorders are characterized by a disturbance of mood accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. *Id*. The ALJ did not discuss whether Jaramillo's "mental impairment" meets or is medically equal to the criteria of Listing 12.06 which applies to "Anxiety Related Disorders." Anxiety Related Disorders are characterized by anxiety that is either a predominant disturbance or experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06.

21. While the ALJ did not specify whether the "mental impairment" he was analyzing was Jaramillo's depression, PTSD, or both, having only used Listing 12.04, it is clear that the ALJ failed to evaluate the severity of Jaramillo's PTSD under Listing 12.06 in either step two or step three. Rather, the ALJ found that "[t]he claimant's mental impairment does not meet or medically equal the criteria of listing 12.04." This is error. See *Murdock v. Astrue,* 458 F. App'x 702, 703 (10th Cir. 2012) (unpublished) (finding that ALJ erred by not discussing evidence or making findings to support conclusion that certain impairments did not meet a specific listing.)

---

[6] Plaintiff only objects to the ALJ's failure to evaluate his anxiety-related disorders at step two, however, since the special technique is to be utilized at steps two and step three, it is necessary to determine whether the ALJ later properly evaluated Jaramillo's mental impairments at subsequent steps.

22. The substantial evidence supports the conclusion that the ALJ should have evaluated Jaramillo's mental impairment using the criteria of Listing 12.06. Jaramillo was initially diagnosed with PTSD by NMBH in June of 2008 and given medication to control his symptoms. Providers at NMBH noted that Jaramillo suffered from depression associated with PTSD which was impacting his daily living. Jaramillo explained that since his gunshot injury, he does not like to go out in public and has social anxiety.

23. Also in July of 2008, Jaramillo was evaluated by Dr. Logan[7] who found that Jaramillo suffered from two specific categories of mental impairments: 12.04 Affective Disorders; and 12.06 Anxiety-Related Disorders. [Tr. 286.] Dr. Logan identified Jaramillo's Affective Disorder as "MDD", [Tr. 289], and the Anxiety-Related Disorder as "PTSD." [Tr. 291.] Jaramillo described to Dr. Logan and in his testimony that he gets anxiety when in crowds and public places. He prefers to stay close to home and not be around a lot of people. Because one of Jaramillo's "mental impairments" included an anxiety related disorder, the ALJ should have evaluated the severity of the disorder under Listing 12.06.

24. A step three error, such as the one in this case, does not automatically require remand. *Murdock*, 458 F. App'x at 703-04. Instead, the Court must consider whether "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Id*., F. App'x at 704 (citing *Fischer–Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir.2005)). If such findings "conclusively preclude Claimant's qualification under the listings at step three" such that "no reasonable factfinder could conclude otherwise," then any step three error is harmless. *Id*. If, however, there are no findings that "conclusively negate the possibility"

---

[7] Dr. Logan is not a treating physician but performed a Psychiatric Review for Jaramillo's Social Security application. [Tr. 286 – 302.]

that a claimant can meet a relevant listing, *see id*., the Court must remand to the ALJ for further findings, *Id*. (citing *Clifton v. Chater*, 79 F.3d 1007,at 1009–10 (10th Cir.1996)).

25. In this case, there are no findings that "conclusively negate the possibility" that Jaramillo can meet Listing 12.06 and, therefore, the Court must remand to the ALJ for further findings.  As discussed above, the ALJ only analyzed Jaramillo's mental impairments under Listing 12.04 while Jaramillo clearly has a diagnosis and symptoms which should have been evaluated under 12.06. For example, the ALJ mentions that Jaramillo is in treatment for PTSD, he reports having flashbacks and has been depressed since the shooting. [Tr. 16.]  The ALJ further notes Jaramillo is depressed, has social anxiety, trouble sleeping at night and does not have a social life. [Tr. 18.] Despite these findings, the ALJ made no assessment of whether Jaramillo's PTSD was severe and did not rate the severity of this particular mental impairment at steps 2 or 3 using Listing 12.06. Accordingly, remand is necessary.

26. The Commissioner argues that the ALJ concluded that "Plaintiff's depression and PTSD do not cause any marked limitation of function . . . ." However, while the commissioner found that Jaramillo's mental impairment did not cause at least two marked impairments, those impairments were only evaluated under Listing 12.04. The Commissioner cannot lump the affective disorder or depression and the anxiety disorder of PTSD together. The requirements to determine the severity of Affective Disorders under 12.04 and Anxiety Disorders under 12.06, are quite different, as discussed above.  Therefore, it was improper for the ALJ to conclude that Jaramillo's Anxiety Disorder was not severe simply because the Affective Disorder did not meet the criteria of "paragraph B" of Listing 12.04.  The Commissioner further argues that the ALJ considered all of Jaramillo's mental diagnoses. This is incorrect.  While the ALJ does mention Jaramillo's PTSD and concludes that Jaramillo's "PTSD resulted in mild restriction of his

activities of daily living, mild difficulties in maintaining social functioning," as discussed above, the ALJ failed to rate the severity of the PTSD under the appropriate Listing and, therefore, he failed to properly consider Jaramillo's PTSD.

27. Since the Court will recommend remand based on the ALJ's failure to evaluate Jaramillo's PTSD under the proper Listing, the Court will not address Plaintiff's remaining claims of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### V. RECOMMENDATION

28. Since the ALJ's decision is not supported by substantial evidence and the correct legal standards were not applied, it is recommended that this Court GRANT Jaramillo's Motion to Reverse or Remand Administrative Agency Decision [Doc. 20] and REVERSE and REMAND this case for further proceedings consistent with this memorandum opinion.

_____
Alan C. Torgerson
United States Magistrate Judge