IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. JARAMILLO,

        Plaintiff,

    vs.                                Civ. No. 11-906 JB/ACT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant.


**SUPPLEMENTAL PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    **THIS MATTER** comes before the Court on the Motion to Remand or Reverse and Brief in Support of Motion to Remand ("Motion") of the Plaintiff Robert A. Owens ("Plaintiff"), filed May 24, 2012.  [Doc. 20.]  The Commissioner of Social Security ("Defendant") filed a Response on July 25, 2012 [Doc. No. 22], and Plaintiff filed a Reply on August 8, 2012 [Doc. No. 23].  Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court recommends that Plaintiff's Motion be **GRANTED**.

    On July 30, 2013, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Undersigned entered the Magistrate Judge's Report and Recommendation. [Doc. 25.] The Undersigned found that the ALJ failed to evaluate the severity of Plaintiff's post-traumatic stress/anxiety related disorder or discuss whether Plaintiff's "mental impairment" meets or is medically equal to the criteria of Listing 12.06 which applies to "Anxiety Related Disorders" at step three.  [Doc. 25 at 11.] Applying the harmless error analysis set out in *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005),

the Undersigned found that the ALJ's findings did not "conclusively negate the possibility" that the Plaintiff could meet the relevant listing. [Id. at 12-13.]  Because the Undersigned recommended remand based on the ALJ's failure to evaluate and consider Plaintiff's post-traumatic stress syndrome and anxiety-related disorder, Plaintiff's second argument was not addressed. [Id. at  14.]

On August 14, 2013, the Defendant filed its Objection to the Magistrate Report and Recommendation. [Doc. 26.] Plaintiff filed a Response on August 28, 2013 [Doc. No. 27], and the Defendant filed a Reply on September 3, 2013 [Doc. No. 28].  On September 30, 2013, District Judge James O. Browning entered a Memorandum Opinion and Order Regarding the Magistrate Judge's Report and Recommendation. [Doc. 32.] Judge Browning sustained Defendant's Objections and returned this matter to the Undersigned to consider the second issue raised in Plaintiff's Motion to Reverse, *i.e.*, that "[t]he ALJ Failed to Evaluate The Medical Opinion of Mr. Jaramillo's Treating Physician in Violation of Tenth Circuit Case Law and the Administration's Own Regulations," and to prepare a Supplemental Proposed Findings and Recommended Disposition consistent with his Order.

## **PROCEDURAL RECORD**

On June 12, 2008, Plaintiff filed an application for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, alleging disability beginning March 15, 2007. [Tr. 189, 192.] The claims were initially denied on July 30, 2008, and denied again upon reconsideration on September 23, 2008. [Tr. 60-63, 67-69.] Thereafter, Plaintiff filed a written request for hearing on October 8, 2008. [Tr. 72-73.]

On May 20, 2010, Larry C. Marcy, Administrative Law Judge ("ALJ") conducted a hearing. [Tr. 11.] At the hearing, Plaintiff was represented by Attorney Helen L. Lopez. [Tr. 11.] On June 24, 2010, the ALJ issued an unfavorable decision. [Tr. 11-20.] In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012; that he had not engaged in substantial gainful activity since March 15, 2007, the alleged onset date; and that Plaintiff has severe impairments consisting of left shoulder pain, back disorders, asthma, right hand pain, and depression. [Tr. 13.] However, the ALJ found that Plaintiff was not disabled at step three of the sequential evaluation process.  Specially, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 13.]  The ALJ also found that through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but "must frequently change positions.  He cannot reach overhead and is limited to minimal - very occasional - handling with the left upper extremity.  He is limited to understanding, remembering, and carrying out simple tasks due to his pain and depression." [Tr. 16.]  In considering the claimant's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform. [Tr. 19.]

On June 24, 2010, Plaintiff requested that the Appeals Counsel review the ALJ's decision. [Tr. 1.] This request was denied on August 12, 2011, and therefore, became the final decision of the Commissioner. [Tr. 1-5.] 20 C.F.R. §§ 404.981.  On October 11, 2011, Plaintiff filed his Complaint for judicial review of the ALJ's decision. [Doc. 1.] Plaintiff's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through

December 31, 2012, thus, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. [Tr. 11.]

## STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).  Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*. (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (quotation omitted).

## MEDICAL HISTORY

Plaintiff's medical history is fully set out in the Magistrate Judge's Report and Recommendation.  [Doc. 25.] Because the second issue addressed herein pertains to Plaintiff's left shoulder injury, his medical history regarding his left shoulder is discussed below.

### Left Shoulder Injury

Plaintiff is right handed. [Tr. 40, 51.] He suffered a gunshot wound to his left shoulder in 1995. [Tr. 33 - 34.] Plaintiff reports that he had approximately 14 surgeries related to the gunshot injury all of which took place within two months after the injury. [Tr. 283, 308.] While there are no medical records available with regard to treatment for the gunshot wound [Tr. 283], Plaintiff's subsequent medical exams are replete with references to the injuries suffered due to the gunshot. For example, when Plaintiff was seen at Las Vegas Clinic to establish care in June 2008, healthcare providers noted the deformity of his left shoulder and reduced use of the left arm. [Tr. 318 – 319.]  In July 2008, Plaintiff was seen by Dr. Martin Trujillo of New Mexico

5

Disability Determination Services who observed "abnormalities of the [left] shoulder" such that Plaintiff "is able to shrug his shoulders, but there is limited range of motion of the left shoulder . . . ." [Tr. 284.] Dr. Trujillo's impression was that Plaintiff had "significant deformity and absence of a functional left shoulder girdle, including the joint capsule and rotator cuff.  I would estimate the function at approximately 5%.  However, there is good function of the left lower extremity when the shoulder girdle is not involved.  He is limited in use of the left shoulder." [Tr. 285.]

On July 30, 2008, Dr. N. D. Nickerson, a State agency nonexamining medical consultant, prepared a Physical Residual Functional Capacity Assessment based on his review of Dr. Trujillo's evaluation. [Tr. 307-311.] Dr. Nickerson assessed Plaintiff's exertional limitations as follows: (1) occasionally lift and/or carry (including upward pulling) 20 pounds; (2) frequently lift and/or carry (including upward pulling) 10 pounds; (3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; (4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; (5) push and/or pull unlimited. [Tr. 308.]

On March 31, 2010, Plaintiff presented to orthopaedic surgeon Dr. Philip Forno for evaluation of his ongoing pain and inability to move his left shoulder. [Tr. 341.] Dr. Forno assessed Plaintiff with "severe left shoulder trauma with missing glenohumeral joint and structural changes in the acromion." [Id.] Dr. Forno discussed with Plaintiff the possibility of performing a shoulder fusion. [Id.] Following MRI studies, Dr. Forno performed arthrodesis (bone fusion) on Plaintiff's left shoulder on May 21, 2010. [Tr. 346-48.]

Following surgery, Dr. Forno assessed Plaintiff's exertional limitations as follows: (1) occasionally lift and/or carry (including upward pulling) less than 10 pounds; (2) frequently lift and/or carry (including upward pulling) less than 10 pounds; (3) stand and/or walk for a total

of about 6 hours in an 8-hour workday; (4) sit for a total of about 6 hours in an 8-hour workday; and (5) push and/or pull limited in upper extremities. [Tr. 349.]  There is no indication of a limited time frame for these exertional limitations. *Id.* The record does not reveal whether the fusion surgery improved Plaintiff's condition with regard to the use of his left arm.

## DISCUSSION

Plaintiff claims that the ALJ failed to evaluate the medical opinion of Plaintiff's treating physician in violation of Tenth Circuit case law and the Administration's own regulations. Plaintiff's hearing was held on May 20, 2010, the day before Plaintiff was scheduled to have arthrodesis on his left shoulder.  Plaintiff testified at the hearing that it was his understanding that following the surgery he would have no mobility in his left shoulder. [Tr. 49.] Dr. Forno's opinion evidence was provided to the ALJ on or about May 27, 2010, and the ALJ issued his decision on June 24, 2010. [Doc. 21 at 8.]

Plaintiff argues that his treating surgeon, Philip C. Forno, M.D., completed a physical exertion assessment following his May 2010 surgery that placed Plaintiff's functional capacity in the sedentary level of exertion. [Tr. 349.] Instead of relying on Dr. Forno's opinion in determining Plaintiff's RFC, however, the ALJ relied on the State agency nonexamining medical consultant Dr. N. D. Nickerson's Physical Residual Functional Capacity Assessment from July 2008. [Tr. 18.]   In giving little weight to Dr. Forno's opinion, the ALJ stated:

> Although [Dr. Forno's] limitations may be appropriate for three months following surgery I do not find that they would apply indefinitely, especially since Mr. Jaramillo has no upper right extremity limitations.  Therefore, I have given this opinion evidence little weight.

[Tr. 19.]  Plaintiff argues that the "little weight" given by the ALJ to Dr. Forno's opinion is not supported by the evidence, that Dr. Forno did not limit his opinion evidence to three months

after surgery, and the ALJ overstepped his bounds by making a medical judgment regarding the effects of Plaintiff's surgery.  This Court agrees.

In evaluating a treating physician's opinion with regard to a claim for social security disability and supplemental security income benefits, an ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2, 1996 WL 374188, at *2).  If the answer to this question is no, then the inquiry at this stage is complete.  *Id*.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, "'[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§ ] 404.1527 and 416.927.'" *Robinson*, 366 F.3d at 1082 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Soc. Sec. R. 96–2p, 1996 WL 374188, at *4)). Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* (citing *Watkins*, 350 F.3d at 1301).

Further, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinions and the reason for that weight." *Robinson*, 366 F.3d at 1082 (citing *Watkins*, 350 F.3d at 1300)(quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Robinson*, 366 F.3d at 1082 (citing *Watkins*, 350 F.3d at 1301)(quotations omitted). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson*, 366 F.3d at 1082 (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation and emphasis omitted)).

Here, the ALJ did precisely what Tenth Circuit law makes clear he should not do; *i.e.*, he rejected a treating physician's opinion outright on the basis of his own speculation and lay opinion. Dr. Forno's assessment of Plaintiff's exertional limitations following his shoulder surgery on May 21, 2010, states as follows: (1) occasionally lift and/or carry (including upward pulling) less than 10 pounds; (2) frequently lift and/or carry (including upward pulling) less than 10 pounds; (3) stand and/or walk for a total of about 6 hours in an 8-hour workday; (4) sit for a total of about 6 hours in an 8-hour workday; and (5) push and/or pull limited in upper extremities. [Tr. 349.] The lifting restrictions assessed by Dr. Forno are aligned with sedentary work, not light work.  See 20 C.F.R. 404.1567(a) and 416.967(a).  Furthermore, Dr. Forno did not confine Plaintiff's exertional limitations to *any* defined period of time.  The ALJ's lay opinion that these exertional imitations would only apply for three months and not apply indefinitely is just that, the ALJ's lay opinion.  It is not supported by the medical evidence.

In addition to rejecting Dr. Forno's opinion on the basis of his own speculation and lay opinion, the ALJ also failed to give legitimate reasons for doing so.  Tenth Circuit law makes

clear that even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§ ] 404.1527 and 416.927.  *Robinson*, 366 F.3d at 1082 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Soc. Sec. R. 96–2p, 1996 WL 374188, at *4)).  Tenth Circuit law also makes clear that "[t]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant."  *Robinson*, 366 F.3d at 1084 (quoting Williams v. Bowen, 844 F.3d 748, 757 (10th Cir. 1988).  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and *the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all*.  *Id.* (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(a), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2) (emphasis added).  Here, the ALJ failed to give specific legitimate reasons for rejecting Dr. Forno's opinion and failed to discuss the factors discussed above as required by regulations and case law.  The ALJ also erred in rejecting the treating-physician opinion of Dr. Forno in favor of the State agency nonexamining medical consultant opinion of Dr. Nickerson absent a legally sufficient explanation for doing so.

## RECOMMENDED DISPOSITION

For the reasons discussed above, I recommend finding that Plaintiff's Motion to Reverse or Remand [Doc. 20] be granted.

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c).  Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to  § 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court for the District of

New Mexico.  A party must file any objections within the fourteen (14) days period allowed if

that party wants to have appellate review of the proposed findings and recommendations.  If no

objections are filed, no appellate review will be allowed.


                                         _____

                                         **ALAN C. TORGERSON**
                                         **United States Magistrate Judge**

11