## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. JARAMILLO,

      Plaintiff,

vs.                                                                    No. CIV 11-0906 JB/ACT

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING SUPPLEMENTAL PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Magistrate Judge's Supplemental Proposed Findings and Recommended Disposition, filed November 4, 2013 (Doc. 35)("PFRD"). On November 18, 2013, Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Defendant") filed Objections to the Supplemental Proposed Findings and Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1). See Doc. 36 ("Objections to PFRD").    On December 2, 2013, Plaintiff Joseph A. Jaramillo filed his Response to Commissioner's Objections. See Doc. 37 ("Response to Objections to PFRD").   The Court will overrule the Defendant's Objections to PFRD and adopt the PFRD.

## FACTUAL BACKGROUND

To provide context, the Court takes the following facts from Jaramillo's Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision, filed May 24, 2012 (Doc. 21)("Motion to Reverse Memo."). Jaramillo, a thirty-six-year-old male, suffers the lingering effects of a gunshot wound to his left shoulder. See Motion to Reverse Memo. at 2.

> Mr. Jaramillo has had fifteen (15) surgical procedures to repair his severely
> damaged left shoulder joint as a result of a gunshot wound.   On July 17, 2008, Mr.

> Jaramillo was evaluated by Martin Trujillo, MD at the request of [the State of New Mexico's Disability Determination Services].   Dr. Trujillo estimated the function of Mr. Jaramillo's left shoulder at approximately 5%.   In May 2010 Mr. Jaramillo was subjected to a shoulder arthrodesis (shoulder fusion).   Mr. Jaramillo also suffers from PTSD/anxiety-related disorder, depression and asthma.

Motion to Reverse Memo. at 2 (citations omitted).

## PROCEDURAL BACKGROUND

The Court rehearsed this case's procedural background in its Memorandum Opinion and Order Regarding the Magistrate Judge's Report and Recommendation, filed September 30, 2013 (Doc. 32).   In this Memorandum Opinion and Order, the Court will focus on those portions of the procedural background that relate to Jaramillo's exertional limitations -- that is, the limitations that his shoulder injury imposes on his ability to work.

### 1.      Application for Social Security Disability Benefits; Initial Denial of Claims.

On June 12, 2008, Jaramillo applied for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act , 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, alleging disability beginning March 15, 2007.   Transcript of the Administrative Record at 189, filed March 20, 2012 (Doc. 17)("Record"); id. at 192. The claims were initially denied on July 30, 2008, and denied again upon reconsideration on September 23, 2008.   See Record at 60-63; id. at 67-69.

### 2.      Hearing Before the Administrative Law Judge.

On May 20, 2010, the Administrative Law Judge ("ALJ") conducted a hearing.   See Record at 11.   During the hearing, the ALJ heard the following testimony relating to shoulder surgery that Jaramillo would have the next day:

Jaramillo's Atty:      With regard to your surgery, what did the doctor tell you about you, the surgery is tomorrow, right?

- 2 -

| | |
|---|---|
| Jaramillo: | Yes. |
| Jaramillo's Atty: | And what did the doctor tell you about your recovery time. |
| Jaramillo: | Three months, basically, I'll be, and then after that, I'll need physical therapy for, I guess to try to help with some of the motion in my arm. |
| Jaramillo's Atty: | Had, are you seeing, oh, after you have your, your surgery, what type of mobility will you have in your left shoulder? |
| Jaramillo: | Zero. |
| Jaramillo's Atty: | It will be fused -- |
| Jaramillo: | It will be fused -- |
| Jaramillo's Atty: | -- and locked into place? |
| Jaramillo: | It's a light job, yes. |

Record at 48-49.

Later during the hearing, the ALJ heard the following testimony from a vocational expert,

whom the transcript identifies only as "Mr. Hardin."   Record at 26-27.

| | |
|---|---|
| [ALJ:] | Assume that we have an individual that has a left shoulder deformity due to a gunshot wound.  And he, affects his using his left arm at minimal to just very occasional handling with it.  That's his non-dominant arm.  No overhead reaching with it.  No more than light work.  And due to his physical pain and psychological symptoms, he would be limited to understanding, remembering, and carrying out simple tasks.  Could such an individual perform any of the claimant's past work? |
| [Hardin:] | No, sir. |
| [ALJ:] | And in your opinion, would there be other jobs that such a person could perform with the claimant's age, education, and work history?  He has a high school diploma and he's 33. |

- 3 -

[Hardin:]          Your honor, that hypothetical person would be capable of performing work as a conveyor line bakery worker.   This is a type of quality control job.   It's an SVP of two and light. 45,000, U.S.   400, New Mexico.   A counter clerk.   SVP of two and light.   30,000, U.S.   300, New Mexico.   A tanning salon attendant.   SVP of two and light.

[Unidentified Atty]:   What kind of salon?

[Hardin:]          Tanning salon.  Uh-huh.  Let's see.  Two and light.  80, 000, U.S.   And 500, New Mexico.

[ALJ:]             What if he were limited to sedentary work?   Could he do those jobs?

[Hardin:]          No, sir.


* * * *

[Jaramillo's Atty:]   Would a conveyor line baker require any lifting?

[Hardin:]          Minimal.   But this is a, more of a quality control job.   So they're at a conveyor belt as the finished product goes by. And if there's something that's doesn't meet standards, they take it off the line.   So, they're talking about lifting a loaf of bread.

* * * *

[Jaramillo's Atty:]   What does the tanning salon attendant [d]o?

[Hardin:]          It's a person who works at a tanning salon.   They wipe down the beds once they're finished, make appointments, make change, sell tanning lotion.

[Jaramillo's Atty:]   Does it require lifting?

[ALJ:]             What was the question?

[Hardin:]          Probably the --

[ALJ:]             Require what?   And --

- 4 -

| | |
|---|---|
| [Jaramillo's Atty:] | Does it require lifting? |
| [ALJ:] | That's it, I thought you said, "[INAUDIBLE]." |
| [Hardin:] | [INAUDIBLE] -- |
| [ALJ:] | Okay.   Lifting.   I'm -- |
| [Hardin:] | The heaviest thing that would typically be lifted would be the spritz bottle with the spray that you spray down the beds and then wipe down the beds, everything.   Other than, other than [th]at, you're looking at bottles of tanning lotion.   That would typically -- |
| [Jaramillo's Atty:] | What about cases of tanning . . . lotion? |
| [Hardin:] | That's possible.   It's, it does have a 20 pound lifting limit for the job, so that depends upon if the owner is the one that's unloading the truck. |
| [Jaramillo's Atty:] | Oh, it has -- |
| [Hardin:] | Or the -- |
| [Jaramillo's Atty:] | -- 20 pounds that you have -- |
| [Hardin:] | It's light. |
| [Jaramillo's Atty:] | -- to be able to lift. |
| [Hardin:] | It's a light job, yes. |

Record at 51-55.

### 3.   Medical Opinion Evidence that the ALJ Considered.

Two pieces of medical evidence feature prominently in the ALJ's opinion of Jaramillo's exertional limitations.   The first is the June 30, 2008, opinion of N.D. Nickerson, M.D., a nonexamining consultant for Disability Determination Services, a State of New Mexico agency. See Residual Functional Capacity Assessment, executed 07/30/2008, filed March 20, 2012

(Doc. 17-10)("Dr. Nickerson's Opinion").[1]   According to Dr. Nickerson's Opinion, Jaramillo is able to occasionally lift and/or carry twenty pounds; to frequently lift and/or carry 10 pounds; to stand and/or walk, with normal breaks, for about six hours in an eight-hour work day; to sit, with normal breaks, for about six hours in an eight-hour work day; and to push and/or pull, including operation of hand and/or foot controls, without limitation, except for the limitations placed on his ability to lift and/or carry.   See Dr. Nickerson's Opinion at 2.

The second key piece of medical information is Philip Forno, M.D.'s opinion.   See Operative Summary, executed May 26, 2010, filed March 20, 2012 (Doc. 17-10)("Dr. Forno's Opinion").   Dr. Forno performed a shoulder arthrodesis[2] on Jaramillo on May 21, 2010 -- the day

---

[1]Although the record does not state that Dr. Nickerson was a nonexamining medical consultant, the PFRD identifies Dr. Nickerson as a "State agency nonexamining medical consultant," and the Defendant does not object to that characterization.   PFRD at 10.   Moreover, in Social Security cases, State agency medical consultants are, as a matter of course, nonexamining sources of medical information.   See Soc. Sec. R. 96-6p, 1996 WL 374180 at *2.   Further, although the record does not state that Dr. Nickerson worked for Disability Determination Services, it does state that she worked for a state agency, and Disability Determination Services is the New Mexico agency charged with the tasks that Dr. Nickerson performed.

[2]Arthodesis is "[t]he stiffening of a joint by operative means."   Stedman's Medical Dictionary 160 (28th ed. 2006).   Shoulder arthrodesis is "fusion of the glenohumeral joint." Stedman's Medical Dictionary, supra, at 160.   Glenohumeral means "[r]elating to the glenoid cavity and the humerus."   Stedman's Medical Dictionary, supra, at 811.   Glenoid means "[r]esembling a socket; denoting the articular depression of the scapula entering into the formation of the shoulder joint."   Stedman's Medical Dictionary, supra, at 811.   The humerus is "[t]he bone of the arm, articulating with the scapula above and the radius and ulna below."   Stedman's Medical Dictionary, supra, at 906.
Articulation means either "joint" or a "joining or connecting together loosely to allow motion between parts."   Stedman's Medical Dictionary, supra, at 163.   The scapula is "[a] large triangular flattened bone lying over the ribs, posteriorly on either side, articulating laterally with the clavicle at the acromioclavicular joint and the humerus at the glenohumeral joint.   It forms a functional articulation with the chest wall . . . ."   Stedman's Medical Dictionary, supra, at 1725. The radius is "[t]he lateral and shorter of the two bones of the forearm."   Stedman's Medical Dictionary, supra, at 1625.   The ulna is "[t]he medial and larger of the two bones of the forearm." Stedman's Medical Dictionary, supra, at 2063.   Acromioclavicular is defined as "[r]elating to the

after the administrative hearing.   See Dr. Forno's Opinion at 1.   Dr. Forno imposed exertional

limitations on Jaramillo that differ from those which Dr. Nickerson suggested.   See Dr. Forno's

Opinion at 4.   Dr. Forno would allow Jaramillo to occasionally or frequently lift and/or carry less

than ten pounds; to stand and/or walk for about six hours in an eight-hour workday; and to sit for

about six hours in an eight-hour workday.   See Dr. Forno's Opinion at 4.   Dr. Forno did not find

that Jaramillo "[m]ust periodically alternate sitting and standing to relieve pain or discomfort."

Dr. Forno's Opinion at 4.

### 4.      The ALJ's Decision.

On June 24, 2010, the ALJ found that Jaramillo

> has the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) with the following exceptions.   He must frequently
> change positions.   He cannot reach overhead and is limited to minimal -- very
> occasional -- handling with the upper left extremity.   He is limited to
> understanding, remembering, and carrying out simple tasks due to his pain and
> depression.

Record at 16.

---

acromion and clavicle; denoting the articulation between the clavicle and the acromion of the
scapula."   Stedman's Medical Dictionary, supra, at 19.   The acromion is "[t]he lateral extension
of the spine of the scapula that projects as a broad flattened process overhanging the glenoid fossa;
it articulates with the clavicle and gives attachment to part of the deltoid muscles.   Its lateral
border is a palpable landmark ('the point of the shoulder')."   Stedman's Medical Dictionary,
supra, at 19.   The clavicle is defined, in relevant part, as "[a] doubly curved long bone that forms
part of the shoulder girdle."   Stedman's Medical Dictionary, supra, at 389.   Medial means
"[r]elating to the middle or center; nearer to the median . . . plane." Stedman's Medical Dictionary,
supra, at 1167.   The glenoid fossa is the "glenoid cavity of scapula."   Stedman's Medical
Dictionary, supra, at 764.   The deltoid muscles are defined, in relevant part, as the
"intrinsic . . . m[uscles] of shoulder joint . . . ." Stedman's Medical Dictionary, supra, at 1241. The
median plane is "a p[lane] vertical in the anatomic position, through the midline of the body that
divides the body into right and left halves."   Stedman's Medical Dictionary, supra, at 1504.
       The upshot of these definitions, then, is that the surgery which Dr. Forno performed fused
Jaramillo's shoulder joint.

With respect to the exertional limitations, the ALJ substantially credited Dr. Nickerson's Opinion and discounted Dr. Forno's opinion.   The ALJ gave "great weight" to the following conclusions from the State agency, because he found that they "are well supported by the medical evidence of record": "The State agency concluded Mr. Jaramillo's left shoulder deformity status post gunshot wound and asthma allowed him to perform light work.   He could not reach overhead with his left arm. . . . These findings were upheld on reconsideration."   Record at 18-19.   The ALJ continued: "I also considered [Dr. Forno's opinion].   Although those limitations may be appropriate for three months following surgery I do not find they would apply indefinitely, especially since Mr. Jaramillo has no upper right extremity limitations.   Therefore, I have given this opinion evidence little weight."   Record at 19.

The ALJ recognized that, according to Hardin's testimony,[3] Jaramillo could not perform his past work, but concluded that jobs that Jaramillo could perform exist in the national economy in significant numbers.   See Record at 19.   The ALJ stated that, if Jaramillo "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be" required.   Record at 20.   The ALJ conceded, however, that Jaramillo's "ability to perform all or substantially all of the requirements of" light work "has been impeded by additional limitations." Record at 20.   The ALJ substantially credited Hardin's testimony that an individual in Jaramillo's position could perform the requirements of occupations like conveyor line bakery worker, counter clerk, and tanning salon attendant.   See Record at 20.   The ALJ also acknowledged that,

---

[3]The ALJ refers to the expert as "Mr. Harden."   Record at 19.   The transcript refers to the vocational expert as "Mr. Hardin."   Record at 26-27.   The Court will use the transcript's spelling.

according to Hardin, "the same hypothetical individual who was limited to sedentary work would not be able to perform any of the identified jobs."   Record at 20.

**5.**     **Motion to Remand.**

On May 24, 2012, Jaramillo filed a Motion to Reverse or Remand Administrative Agency Decision, see Doc. 21 ("Motion to Reverse"), and his Motion to Reverse Memo.   Jaramillo raises two arguments in his Motion to Reverse.   Jaramillo first argues that the ALJ committed legal error at step two by not assessing whether Jaramillo had a determinable mental impairment of post-traumatic stress/anxiety related disorder and not ruling on the severity of this mental impairment.   Motion to Reverse 1.   The Court disposed of Jaramillo's mental impairment argument in its Memorandum Opinion and Order Regarding the Magistrate Judge's Report and Recommendation, filed September 30, 2013 (Doc. 32).   The Court will not, therefore, belabor its discussion of the parties' arguments on that issue, but will, instead, focus its attention on Jaramillo's second argument.

Jaramillo's second argument is that the ALJ incorrectly evaluated Dr. Forno's medical opinion.   See Motion to Reverse Memo. at 7.   Jaramillo states that Dr. Forno's physical assessment "placed Mr. Jaramillo's functional capacity in the sedentary level of exertion," Motion to Reverse Memo. at 7, but that the ALJ "placed Mr. Jaramillo's functional capacity in the light level of exertion," Motion to Reverse Memo. at 7.   Jaramillo points out that the United States Court of Appeals for the Tenth Circuit has laid out a multi-step, multi-factor test for evaluating the testimony of a treating physician, and states that the ALJ did not properly evaluate Dr. Forno's opinion under that test, but instead "substituted his own medical opinion for that of Dr. Forno." Motion to Reverse Memo. at 7-8.   According to Jaramillo, the evidence does not support the

weight that the ALJ gave to Dr. Forno's opinion: Jaramillo points out that Dr. Forno's opinion includes no three-month limitation.   See Motion to Reverse Memo. at 8.   Jaramillo contends that, "[r]ather than make a medical judgment as to the effects of M[r]. Jaramillo's surgery and overstep his bounds into the province of medicine, the ALJ should have contacted Dr. Forno [about] his opinion evidence as well as prognosis for the surgery."   Motion to Reverse Memo. at 8 (footnotes omitted)(quoting Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)("If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available.")).   Jaramillo points out that he had surgery the day after the hearing and that Dr. Forno provided the ALJ with his opinion approximately a month before the ALJ issued his decision, giving the ALJ "plenty of time to contact Dr. Forno."   Motion to Reverse Memo. at 8.   According to Jaramillo, "[t]he ALJ's failure to give specific and good reasons for the weight given to Dr. Forno's opinion evidence constitutes legal error.   The only option for remedying such legal error is remand where this Court cannot substitute its judgment of the evidence for that of the ALJ."   Motion to Reverse Memo. at 9 (footnote omitted).

On July 25, 2012, the Defendant filed its Response to Plaintiff's Motion to Reverse and Remand.   See Doc. 22 ("Response to Motion to Reverse").   The Defendant maintains that substantial evidence and a correct application of the law support the ALJ's decision, and that the Court must, therefore, affirm.   Response to Motion to Reverse at 2.   With respect to Jaramillo's first, mental impairment argument, the Defendant asserts that the ALJ properly evaluated the relevant evidence in arriving at his residual functional capacity ("RFC") conclusion and cites

portions of the record indicating that the ALJ properly considered Jaramillo's mental conditions. Response to Motion to Reverse at 3-5.

With respect to Jaramillo's capacity to perform the positions that Hardin listed, the Defendant reminds the Court that the ALJ weighs the record as a whole and resolves any inconsistencies in it in arriving at the RFC assessment, and that it is not the Court's role to "reweigh the evidence and make its own findings on resolution of the inconsistencies of the record." Response to Motion to Reverse at 6. The Defendant asserts:

> There is no merit to Plaintiff's assertion that Dr. Forno's post-hearing opinion that Plaintiff should lift less than 10 pounds undermines the ALJ's finding that Plaintiff can perform the VE enumerated light jobs. In fact, the VE testified that the conveyor belt job would involve lifting the weight of a loaf of bread as it is more of a quality control job, and that the tanning salon attendant would lift a spray bottle used to spray the tanning beds before wiping them down. Thus, at the very least, Plaintiff can perform these jobs even if Dr. Forno's lifting restriction was controlling. Reversible error does not exist when Plaintiff has not shown any potential impact on the disposition of the case. Barnett v. Apfel, 231 F.3d 687, 689 (10th Cir. 2000); Shinseki v. Sanders, 129 S.Ct. 1696, 1706 (2009)(Plaintiff has burden of showing alleged error was harmful).

Response to Motion to Reverse at 7. Moreover, the Defendant maintains that the ALJ properly gave Dr. Forno's opinion little weight, citing cases from the Tenth Circuit which hold that, where a doctor fails to "link the conclusions in the form to the clinical findings by any reasoning or analysis," that opinion is entitled to no weight. Response to Motion to Reverse at 7 (citing Bernal v. Bowen, 851 F.2d 297 (10th Cir. 1988); Frey v. Bowen, 816 F.2d 508 (10th Cir. 1987)). The Defendant states that Dr. Forno examined only Jaramillo's left shoulder -- on which he operated -- and not Jaramillo's right shoulder, and argues that "[n]othing in Dr. Forno's records indicate [sic] that Plaintiff could not lift up to 20 pounds occasionally with his dominant right upper extremity since Plaintiff does not have a limitation to his right arm." Response to Motion to Reverse at 7-8.

- 11 -

The Defendant asserts that, under well-settled law, "the ALJ can discount any medical source opinion when it is inconsistent with that person's own treatment notes or the record as a whole." Response to Motion to Reverse at 8.   The Defendant also points out that Dr. Forno operated on Jaramillo only five days before he dated his opinion about Jaramillo's exertional limitations, and argues that "[t]he ALJ correctly inferred that the stated limitation was related to a recovery period of the left shoulder, and would not last the required 12 months."   Response to Motion to Reverse at 8 (citation omitted).

Further, the Defendant asserts that other evidence supports the ALJ's conclusion that Jaramillo could perform "the lifting requirements of the enumerated jobs with his dominant right arm."   Response to Motion to Reverse at 8.   For example, the Defendant maintains that, during a previous examination at "the Las Vegas Clinic, his extremities had no clubbing, cyanosis or edema, and his right arm had normal strength and a full range of motion."   Response to Motion to Reverse at 8 (citation omitted).[4]   During a second examination, Martin Trujillo, M.D., determined that Jaramillo's "abnormalities were limited to his left upper extremity, but he still had 'rather good range of motion and strength of the left upper extremity from the biceps muscles down.'" Response to Motion to Reverse at 8 (quoting Disability Determination Examination at 2, dated

---

[4] Clubbing is "[a] condition affecting the fingers and toes in which the proliferation of distal soft tissues, especially the nail beds, results in thickening and widening of the extremities of the digits; the nails are abnormally curved, the nail beds excessively compressible, and skin over them red and shiny."   Stedman's Medical Dictionary, supra, at 394-95.   Distal means "[s]ituated away from the center of the body, or from the point of origin; specifically applied to the extremity or distant part of a limb or organ."   Stedman's Medical Dictionary, supra, at 572.   Cyanosis is "[a] dark bluish or purplish discoloration of the skin and mucous membrane due to deficient oxygenation of the blood, evident when reduced hemoglobin in the blood exceeds 5 g/100 mL." Stedman's Medical Dictionary, supra, at 475.   Edema is "[a]n accumulation of an excessive amount of watery fluid in cells or intercellular tissues."   Stedman's Medical Dictionary, supra, at 612.

July 16, 2008, filed March 20, 2012 (Doc. 17-10)).  The Defendant points out that, during Dr. Trujillo's examination, Jaramillo's "other extremities were symmetrical with good strength, and he had adequate grip to both hands."  Response to Motion to Reverse at 8 (citation omitted).  In the Defendant's view, the evidence, therefore, supports the ALJ's finding that Jaramillo "could perform the lifting involved in the enumerated jobs by using his right upper extremity, and that he could do minimal handling of objects with the upper left extremity."  Response to Motion to Reverse at 8 (citations omitted).  The Defendant also points out that this conclusion coheres with the conclusion of "State agency medical experts."  Response to Motion to Reverse at 8.

The Defendant, therefore, asserts that the ALJ correctly found that Jaramillo could perform those jobs that Hardin identified and that Jaramillo has failed to prove that the ALJ inadequately resolved the conflicts of record.  See Response to Motion to Reverse at 9.  The Defendant concedes that "the burden of production shifts to the Commissioner at step five to show a significant number of other jobs exist in the national economy," but nonetheless asserts that "the ultimate burden of persuasion to show he cannot perform those jobs remains with the claimant."  Response to Motion to Reverse at 9.  The Defendant submits that Jaramillo has not carried that burden.  See Response to Motion to Reverse at 9.

> The Commissioner respectfully submits that the ALJ properly and fairly determined at the fifth step that Plaintiff was not disabled during the adjudicated period because he could perform the unskilled, light jobs the VE enumerated. Based on the foregoing arguments, it is clear that there is "more than a scintilla" of evidence to support the ALJ's decision.  The Commissioner's findings are within the purview of the Social Security Act and are consistent with regulatory criteria. The Commissioner therefore urges that the Court AFFIRM the ALJ's Decision.

Response to Motion to Reverse at 9 (citation omitted).

On August 8, 2012, Jaramillo filed his Reply Memorandum In Support of Motion to Reverse or Remand Administrative Agency Decision.   See Doc. 23 ("Reply in Support of Motion to Reverse").   With respect to his mental impairment arguments, Jaramillo asserts that, contra the Defendant, the ALJ's failure to conclude that Jaramillo's post-traumatic stress disorder ("PTSD") was a severe impairment is not harmless, because it violates Social Security regulations.   Reply in Support of Motion to Reverse at 1-2.   Further, he submits that the Defendant's other arguments about his mental impairments "are *post-hoc* rationalization[s] for the ALJ's failure to consider his PTSD and respective functional limitations," and that the Court should, therefore, reject them. Reply in Support of Motion to Reverse at 2.

With respect to his treating-physician argument, Jaramillo submits that the Defendant's argument that he "could do the **light jobs** enumerated by [Hardin], even if he was limited to the performance of **sedentary work** in accordance with Dr. Forno's medical source opinion," is "*post-hoc* rationalization."   Reply in Support of Motion to Reverse at 3 (emphasis in original). Jaramillo argues that "the ALJ made medical judgments as to the effects of M[r]. Jaramillo's surgery and overstepped his bounds into the province of medicine."   Reply in Support of Motion to Reverse at 3 (footnote omitted).   Jaramillo submits that, in his response, the Defendant "becomes a vocational expert."   Reply in Support of Motion to Reverse at 3.   Jaramillo continues:

> Rather than demonstrating where in the decision the ALJ properly justified the weight given to Dr. Forno, the Commissioner, once again, engages in *post-hoc* rationalization.   The Commissioner strays from the ALJ's decision and argues that the record supports the weight given by the ALJ to Dr. Forno's medical opinion. An ALJ's decision should be evaluated based solely on the reasons stated in the decision.   The Commissioner failed to do so.

Reply in Support of Motion to Reverse at 3 (citation omitted).

- 14 -

6.      **The Magistrate Judge's Initial Report and Recommendation; the Court's Memorandum Opinion Declining to Adopt It.**

On July 30, 2013, having considered the Motion, the memoranda that the parties submitted, the administrative record, and the applicable law, the Honorable Alan C. Torgerson, United States Magistrate Judge, entered the Magistrate Judge's Report and Recommendation, and recommended remand based on Jaramillo's first argument.   See Doc. 25 ("R&R").   In Judge Torgerson's R&R, he found that the ALJ's failure to specifically mention Jaramillo's post-traumatic stress/anxiety related disorder at step two does not constitute reversible error.   That aside, Judge Torgerson also found that the ALJ failed to evaluate the severity of Jaramillo's post-traumatic stress/anxiety related disorder, or discuss whether Jaramillo's "mental impairment" meets or is medically equal to the criteria of Listing 12.06, the list of "Anxiety Related Disorders" to which an ALJ may compare alleged mental disorders, at step three.[5]   R&R at 11.   Applying the harmless error analysis set out in Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005), Judge Torgerson found that the ALJ's findings did not "conclusively negate the possibility" that Jaramillo could meet the relevant listing.   R&R at 12-13.   Because Judge Torgerson recommended remand based

---

[5] "Listing" is a term of art in Social Security cases.  If a claimant is not engaged in substantial gainful activity and has a medically severe impairment, the ALJ compares the claimant's impairment with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").   20 C.F.R. § 404.1520(a)(4)(iii); id. at § 404.1520(d).   A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.   20 C.F.R. § 404.1520(a)(4)(iii); id. at § 404.1520(d).   If the impairments were not listed or medically equivalent to a listed impairment, the evaluation proceeds to Step Four, where the claimant must establish that he or she does not retain the RFC to perform her past relevant work.   See 20 C.F.R. § 404.1520(a)(4)(iv); id. at § 404.1520(f); id. at § 404.1520(h).

A regulation effective February 26, 2014 altered some sections of the appendix that lists impairments.   See Extension of Expiration Dates for Several Body System Listings, 79 Fed. Reg. 10661-63 (Feb. 26, 2014)(to be codified at 20 C.F.R. Pt. 404).   The revisions do not relate to the portions of the appendix at issue.

on the ALJ's failure to evaluate and consider Jaramillo's post-traumatic stress syndrome and anxiety-related disorder, Judge Torgerson did not address Jaramillo's second argument. See R&R at 14.

The Defendant asked the Court to decline to adopt Judge Torgerson's R&R and to affirm the ALJ's decision, because any findings as to Listing 12.04, Affective Disorders, would necessarily be the same as to Listing 12.06, Anxiety-Related Disorders. See Objection to Magistrate Judge's Report and Recommendation at 2, filed August 14, 2013 (Doc. 26)("Objections to R&R"). As such, the Defendant stated that "the Court may supply any missing dispositive finding concerning Listing 12.06 'based on material the ALJ did at least consider (just not properly), [and it] could confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way.'" Objections to R&R at 2 (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Jaramillo asked the Court to adopt Judge Torgerson's R&R, because the ALJ failed to include any limitations at steps three or four stemming from his post-traumatic stress/anxiety related disorder, and, he argued, this error warrants remand. See Response to Objection to Magistrate Judge's Report and Recommendations at 2, filed August 28, 2013 (Doc. 27)("Response Supporting R&R"). Jaramillo argued that there is a difference of substance between Listing 12.04 and Listing 12.06, and specifically refers to the "paragraph C" criteria of 12.06 that provides for an assessment of an individual's inability to function independently outside the area of his home. Response Supporting R&R at 4. Jaramillo argued that, if the Court were to find merit in the Defendant's objections, the Court should return the matter to Judge Torgerson to issue a supplemental report and recommendation based on Jaramillo's additional claims of error. See

Response Supporting R&R at 5.

In his Reply, the Defendant contended that Judge Torgerson raised the "listing analysis" sua sponte in his R&R and that he should not have discussed it given it was an issue Jaramillo himself "deemed meritless such that he did not mention [it], let alone develop, an argument." Reply to Plaintiff's Response to Defendant's Objection to Magistrate Judge's Report and Recommendation at 2, filed September 3, 2013 (Doc. 28)("Reply to Response Supporting R&R"). The Defendant further argued that Judge Torgerson recommended remand on the mistaken belief that the "paragraph B" criteria are different for Listing 12.04 and 12.06.[6]   Reply to Response Supporting R&R at 2.   The Defendant reiterated that, if an individual has "paragraph B" limitations under one listing, or lacks limitations under one listing, that individual would necessarily lack limitations regardless of the mental impairment being evaluated.   Reply to Response Supporting R&R at 2.

On September 30, 2013, the Court entered its Memorandum Opinion and Order Regarding the Magistrate Judge's Report and Recommendation.   See Doc. 32. The Court sustained Defendant's Objections to PFRD and returned this matter to Judge Torgerson to consider the second issue that Jaramillo's Motion to Reverse raised, i.e., that "[t]he ALJ Failed to Evaluate The Medical Opinion of Mr. Jaramillo's Treating Physician in Violation of Tenth Circuit Case Law and the Administration's Own Regulations," and to prepare a Supplemental Proposed Findings and Recommended Disposition consistent with his Order..

---

[6] The "paragraph B" criteria are "impairment-related functional limitations" that help evaluate a claim of disability that is related to a mental disorder.   20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").

**7.**     **The Magistrate Judge's Present PFRD.**

On November 4, 2013, having considered the Motion to Reverse, the memoranda that the parties submitted, the administrative record, and the applicable law, Judge Torgerson entered Supplemental Proposed Findings and Recommended Disposition, and recommended remand based on Jaramillo's second argument.   See Doc. 35.   After rehearsing the case's facts and history, Judge Torgerson substantially agreed that the ALJ did not follow the Tenth Circuit's standard regarding treating physician opinions: in Judge Torgerson's view, "the ALJ did precisely what Tenth Circuit law makes clear he should not do; i.e., he rejected a treating physician's opinion outright on the basis of his own speculation and lay opinion."   PFRD at 9.   Judge Torgerson continued:

> Dr. Forno's assessment of Plaintiff's exertional limitations following his shoulder surgery on May 21, 2010, states as follows: (1) occasionally lift and/or carry (including upward pulling) less than 10 pounds; (2) frequently lift and/or carry (including upward pulling) less than 10 pounds; (3) stand and/or walk for a total of about 6 hours in an 8-hour workday; (4) sit for a total of about 6 hours in an 8-hour workday; and (5) push and/or pull limited in upper extremities.   The lifting restrictions assessed by Dr. Forno are aligned with sedentary work, not light work. See 20 C.F.R. 404.1567(a) and 416.967(a).   Furthermore, Dr. Forno did not confine Plaintiff's exertional limitations to *any* defined period of time.   The ALJ's lay opinion that these exertional imitations would only apply for three months and not apply indefinitely is just that, the ALJ's lay opinion.   It is not supported by the medical evidence.

PFRD at 9 (emphasis in original).   Moreover, in Judge Torgerson's view, the ALJ "failed to give legitimate reasons" for rejecting Dr. Forno's opinion:

> Tenth Circuit law makes clear that even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§  ] 404.1527 and 416.927. Robinson[ v. Barnhart], 366 F.3d at 1082 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Soc. Sec. R. 96–2p, 1996 WL 374188, at *4)). Tenth Circuit law also makes clear that "[t]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight

- 18 -

over the views of consulting physicians or those who only review the medical records and never examine the claimant." Robinson[ v. Barnhart], 366 F.3d at 1084 (quoting [Williams v. Bowen], 844 F.3d 748, 757 (10th Cir. 1988). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Id. (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(a), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2)(emphasis added).  Here, the ALJ failed to give specific legitimate reasons for rejecting Dr. Forno's opinion and failed to discuss the factors discussed above as required by regulations and case law. The ALJ also erred in rejecting the treating-physician opinion of Dr. Forno in favor of the State agency nonexamining medical consultant opinion of Dr. Nickerson absent a legally sufficient explanation for doing so.

PFRD at 9-10.   Accordingly, Judge Torgerson recommends that the Court grant the Motion to

Reverse.  See PFRD at 10 (emphasis in original).

On November 18, 2013, the Defendant filed its Objections to the Supplemental Proposed

Findings and Recommended Disposition.    See Doc. 36.   The Defendant does not defend the

ALJ's analysis, but instead suggests that any error was harmless.   See Objections to PFRD at 2.

In the Defendant's view, even if one were to credit Jaramillo's treating surgeon's opinion of

Jaramillo's lifting capacity, Jaramillo still could, as the ALJ concluded, do light work.  See

Objections to PFRD at 2.   The Defendant asserts that, under the relevant regulations, a job is a

"light job"

if 1) it involves standing most of the day, and lifting up to 20 pounds; 2) involves standing most of the day and lifting less than 10 pounds; or 3) involves sitting most of the day using arm and/or leg controls.   The only scenario for a sedentary job is lifting no more than 10 pounds and sitting most of the workday.   See 20 C.F.R. §§ 404.1567(a)&(b), 416.967(a)&(b); Soc. Sec. Rul. 83-10.   In fact, the primary difference between sedentary and most light jobs is the fact that most light jobs require a good deal of walking or standing.   See Soc. Sec. Rul. 83-10.

Objections to PFRD at 1-2.   The Defendant points out that Hardin testified that Jaramillo

could perform the jobs of conveyor line bakery worker (45,000 positions in nation), counter clerk (30,000 positions in nation), and tanning salon attendant (80,000

positions nationally) (Tr. 20, 51-54).   The Vocational Expert testified that the conveyor belt job would involve lifting the weight of a loaf of bread as it is more of a quality control job (Tr. 53), and that the tanning salon attendant would lift a spray bottle used to spray the tanning beds before wiping them down (Tr. 54).   Thus, at the very least, [Jaramillo] can perform these two jobs even if Dr. Forno's lifting restriction to less than 10 pounds was controlling.

Objections to PFRD at 2-3.   In the Defendant's view, even if the ALJ were to accept Dr. Forno's conclusion that Jaramillo should not lift more than ten pounds, Jaramillo is, nevertheless, able to perform the jobs that the Vocational Expert identified: because "Dr. Forno opined [that Jaramillo] could perform the sitting, standing and/or walking requirements of the enumerated light jobs," if Jaramillo "can perform the lifting requirements of the identified jobs, the Court should find that Dr. Forno's opinion does not create reversible error."   Objections to PFRD at 2.   The Defendant suggests that any error that the ALJ committed was, therefore, harmless.   See Objections to PFRD at 2.

On December 2, 2013, Jaramillo filed his Response to Objections to PFRD.   See Doc. 37.   Jaramillo asserts that the Defendant's harmless error argument "is without merit," for two reasons.   Response to Objections to PFRD at 1.   First, in his view, "the ALJ's RFC and hypothetical are defective because he did **not** incorporate any limitations of record stemming from Mr. Jaramillo's mental impairments."   Response to Objections to PFRD at 1 (emphasis in original)(footnote omitted).   Jaramillo notes that he substantially addressed this prong of his argument in his Reply in Support of Motion to Reverse and argues that

Dr. Logan found that Mr. Jaramillo had moderate limitations in his ability to:

(1)   Ability to accept instructions and respond appropriately to criticism from supervisors; and,
(2)   Ability to interact with the general public and co-workers.

- 20 -

> Consequently, Dr. Logan limited Mr. Jaramillo to having only superficial contact
> with co-workers and the general public.

Response to Objections to PFRD at 2 (citations omitted).   Jaramillo also submits that the ALJ

heavily weighed Dr. Logan's opinion, but "failed to incorporate Dr. Logan's limitations in his

RFC and in the hypothetical given to" Hardin, thereby violating Social Security regulations.

Response to Objections to PFRD at 1 n.1.   Jaramillo's second criticism of the Defendant's

harmless error argument is that Hardin "testified that if Mr. Jaramillo were limited to sedentary

work he could **not** do the jobs of conveyor line bakery worker (DOT 524.687-022); counter

clerk; and tanning salon attendant.   Thus, [his] testimony does **not** support the Commissioner's

argument."   Response to Objections to PFRD at 2 (emphasis in original)(footnotes and citations

omitted).   Jaramillo states that Hardin did not provide a Dictionary of Occupation Titles[7]

reference number for the "counter clerk" position and that the Dictionary of Occupational Titles

has multiple entries for "counter clerk."   Response to Objections to PFRD at 2 n.2.   Jaramillo

also contends that "[n]o description for tanning salon attendant appears in the last edition of the"

Dictionary of Occupational Titles.   Response to Objections to PFRD at 2 n.3.

Jaramillo also points out that the Defendant's "reliance on [Hardin's] description of the

exertional requirements of the jobs in question is misplaced because [Hardin's testimony]

conflicts with the description in" the Dictionary of Occupational Titles.   Response to Objections

to PFRD at 2.   Jaramillo contends that the ALJ did not resolve these conflicts, as Social

Security regulations require.   See Response to Objections to PFRD at 2.   Specifically,

Jaramillo points out that "the ALJ limited Mr. Jaramillo 'at minimal to just very occasional

---

[7] Administrative law judges regularly rely on the Dictionary of Occupational Titles, which
the United States Department of Labor once published, in Social Security disability cases.   See 3
Soc. Sec. L. & Practice § 43:128 (2013).

handling' with the left hand and no reaching overhead."   Response to Objections to PFRD at

2-3.   In Jaramillo's view, the ALJ's limitations conflict with the ALJ's conclusion that

Jaramillo could work as a conveyor line bakery worker, which, according to the Dictionary of

Occupational titles, requires "occasional handling" and not "'very occasional handling.'"

Response to Objections to PFRD at 3.   Jaramillo also states, without further explanation, that

> A conveyor line bakery worker

> > [p]ositions cakes on conveyor for application of filling or icing by machine,
> > observes filling or icing application to ensure uniform coverage, and places
> > additional cake layers on coated layers, depending on number of cake layers
> > in product.  Observes cakes moving under automatic topping shaker and
> > cake cutting machine to ensure uniform topping application and cutting.
> > Smooths iced edges of cake, using spatula, and moves decorating tool over
> > top of designated cakes to apply specified appearance. Notifies supervisor
> > of malfunctions.

Response to Objections to PFRD at 3 (quoting U.S. Dep't of Labor, Dictionary of Occupational

Titles      (4th      ed.      1991),      Processing      Occupations,      available      at

https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05C.HTM).

> Jaramillo also argues that

> > the job of counter-clerk requires handling and reaching in excess of the ALJ's RFC.
> > For instance, Counter-Clerk DOT # 246.362-010 requires frequent handling and
> > reaching; Counter-Clerk DOT 249-366-010 requires occasional handling and
> > reaching.   See Dictionary of Occupational Titles, Selected Characteristics of
> > Occupations [SCO], attached hereto as Exhibit  B.   Because the ALJ did not elicit
> > from [Hardin] an explanation for these conflicts, his findings at Step 5 are not
> > supported by substantial evidence.

Response to Objections to PFRD at 3.   In Jaramillo's view, the Defendant's reliance on Hardin's

"testimony to support his argument for harmless error is misplaced."   Response to Objections to

PFRD at 3.   Jaramillo submits that Judge Torgerson correctly determined "that the ALJ failed to

apply the correct legal standards and his decision was not supported by substantial evidence."

Response to Objections to PFRD at 3.

## LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.   See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").   Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."   Finally, when resolving objections to a magistrate judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.   The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."   Fed. R. Civ. P. 72(b)(3).   Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.   A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).   As the Tenth Circuit has noted, "the filing of objections advances the interests

that underlie the Magistrate's Act, including judicial efficiency." One Parcel, 73 F.3d at 1059.

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).8

---

8 Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that Pevehouse v. Scibana and Anderson v. Colvin, 514 F. App'x 756 (10th Cir. 2013), have

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver rule to cover objections that are timely but too general.   See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.   The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).   There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.   Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.   Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."   See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings).   The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.   See id., at 11 ("If any objections come in, . . . I review [the record] and decide it.   If no objections come in, I merely sign the magistrate's order.").   The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.   See Senate Hearings, at 35, 37.   Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.   There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.   It did not preclude treating the failure to object as

---

persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

> a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)).  Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").   In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed findings and recommendation, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing."  United States v. Raddatz, 447 U.S. 667, 674 (1980).  "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place

on a magistrate's proposed findings and recommendations."   United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)).   The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report.   In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).   "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing."   Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony."   Gee v. Estes, 829 F.2d at 1009.   On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order."   Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).   A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."   Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required.   Consequently, a brief order expressly stating the court conducted de novo review is sufficient."   Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).   "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."   Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).   The Tenth Circuit has held that a district court properly conducted a de novo review of a party's evidentiary objections when the district

court's "terse" order contained one sentence for each of the party's "substantive claims" and did

"not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."

Garcia v. City of Albuquerque, 232 F.3d at 766.   The Tenth Circuit has explained that brief

district court orders that "merely repeat[] the language of § 636(b)(1) to indicate its compliance"

are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement
> and adopt the magistrate judges' recommended dispositions when they find that
> magistrate judges have dealt with the issues fully and accurately and that they could
> add little of value to that analysis.   We cannot interpret the district court's
> statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the

exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and

recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate," 28 U.S.C. § 636(b)(1).   See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d

at 724-25 (holding that the district court's adoption of the magistrate judge's "particular

reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1)

and   United States v. Raddatz require).

Where no party objects to the magistrate judge's proposed findings and recommended

disposition, the Court has, as a matter of course and in the interests of justice, reviewed the

magistrate judge's recommendations.   In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT,

2013 WL 1010401 (D.N.M. February 27, 2013)(Browning, J.), the Plaintiff failed to respond to the

magistrate judge's proposed findings and recommended disposition, and thus waived his right to

appeal the recommendations, but the Court nevertheless conducted a review.   2013 WL 1010401, at *1, *4.   The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.   The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'"   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *3 (footnote and internal brackets omitted)(quoting Workheiser v. City of Clovis, No. CIV 12-0485 JB/GBW, 2012 WL 6846401, at *3 (D.N.M. December 28, 2012)(Browning, J.). See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. February 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. February 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting that "[t]he Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").   This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or

a full-fledged review.   Accordingly, the Court considers this standard of review appropriate.   See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").   The Court is reluctant to have no review at all if its name is going at the bottom of the order and opinion adopting the magistrate judge's proposed findings and recommendations.

## LAW REGARDING REVIEW OF DISABILITY DECISIONS

Congress defined "disability" under the Social Security Act, in relevant part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).   To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.   See 42 U.S.C. §423(d)(1)(A).   See also Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993).

As the Tenth Circuit has explained:

> "The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett[ v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005)]. "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Id.   Step one requires the

claimant to demonstrate "that he is not presently engaged in substantial gainful activity." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).   At step two, the claimant must show "that he has a medically severe impairment or combination of impairments."   Id.   At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits.   Williams[ v. Bowen], 844 F.2d 748, 751 (10th Cir. 1988)].

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(Briscoe, J.).   By "listed impairment," the

Tenth Circuit refers to impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §

404.1520(a)(4)(iii); id. at § 404.1520(d).   The Tenth Circuit continues:

> If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show "that the impairment or combination of impairments prevents him from performing his past work."   Grogan[ v. Barnhart], 399 F.3d at 1261.
>
> "If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience."   Hackett[ v. Barnhart], 395 F.3d at 1171. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."   Williams[ v. Bowen], 844 F.2d at 750.

Lax v. Astrue, 489 F.3d at 1084.   Further, disability benefits are denied if the Commissioner

shows that the impairment which precluded the performance of past relevant work does not

preclude alternative work.   See 20 C.F.R. § 404.1520.

42 U.S.C. § 405(g) and case law limits the scope of judicial review of the

Commissioner's determination to two inquiries: first, whether substantial evidence supports the

factual findings; and, second, whether the correct legal standards were applied.   See Hamlin v.

Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(quotation omitted).   Substantial evidence is

such evidence as a reasonable mind might accept as adequate to support a conclusion.   See

Hamlin v. Barnhart, 365 F.3d at 1214.   The court's review is based on the record taken as a

whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'"   Hamlin v. Barnhart, 365 F.3d at 1214 (quoting Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).   The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner's.   Hamlin v. Barnhart, 365 F.3d at 1214 (quotation omitted).

## ANALYSIS

The Court, having reviewed the record de novo, finds that the Defendant's Objections lack a sound basis in the law or in the facts.   The ALJ did not apply the Tenth Circuit's treating-physician standard.   Moreover, the ALJ's error was not harmless, because, if the ALJ were to credit the treating physician's testimony, a reasonable factfinder could have concluded that Jaramillo was not able to do the jobs that the ALJ identified.   The Court will, therefore, remand this case.

**I.      THE ALJ DID NOT APPLY THE TENTH CIRCUIT'S TREATING-PHYSICIAN STANDARD IN ANALYZING JARAMILLO'S TREATING-PHYSICIAN'S TESTIMONY.**

The ALJ incorrectly analyzed Jaramillo's treating-physician's testimony.   The Tenth Circuit, applying Social Security regulations, has adopted a multi-step, multi-factor test that guides ALJ's in analyzing a treating physician's testimony.   The ALJ did not apply that test.

The Tenth Circuit has articulated the framework to guide an ALJ's analysis of medical testimony in the disability context as follows:

> The regulations and agency rulings give guidance on the framework an ALJ should follow when dealing with treating source medical opinions relating to the nature and severity of impairments. An ALJ should "[g]enerally, . . . give more weight to opinions from [claimant's] treating sources."      20 C.F.R.

§ 404.1527(d)(2).   In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."   SSR 96–2p, 1996 WL 374188, at *2; see also 20 C.F.R. § 404.1527(d)(2).

The analysis is sequential.   An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."   SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted).   If the answer to this question is "no," then the inquiry at this stage is complete.   If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.   Id.   In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.   Id.   The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight. . . .

But resolving the "controlling weight" issue does not end our review.   In completing the analysis:

> [a]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.

SSR 96–2p, 1996 WL 374188, at *4.   Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)(quotation omitted).

- 33 -

After considering the pertinent factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2).  Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so.  See Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)(quoting Frey v. Bowen, 816 F.2d [at 513].

Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  Moreover, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Robinson v. Barnhart, 366 F.3d at 1082 (citing McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)(quotation and emphasis omitted)).

The ALJ did not perform this analysis.   The ALJ instead analyzed Dr. Forno's opinion as follows: "I also considered the opinion evidence at Exhibit 12F.   Although those limitations may be appropriate for three months following surgery I do not find they would apply indefinitely, especially since Mr. Jaramillo has no upper right extremity limitations.   Therefore, I have given this opinion evidence little weight."   Record at 19.   The ALJ's analysis does not comply with the Tenth Circuit's multi-step, multi-factor analysis.

It appears that the ALJ rejected Dr. Forno's exertional limitations because of his speculation and lay opinion: despite that Dr. Forno's exertional limitations lacked any time limit, the ALJ imposed one, without pointing to medical evidence to support it.   Moreover, the ALJ did not cite medical evidence to support his conclusion that, because Jaramillo's upper right extremity is not limited, Dr. Forno's limitations would not apply indefinitely.   Dr. Forno did not so limit his conclusion.   It instead appears that the ALJ based his conclusion that, because Jaramillo has no

right-shoulder limitations, Dr. Forno's exertional limitations would not apply indefinitely, on his own speculation or lay opinion, and not on the basis of medical evidence.

The only support that the Court has found in the record for the ALJ's three-month figure is the following exchange from Jaramillo's testimony:

| [Jaramillo's Atty:] | With regard to your surgery, what did the doctor tell you about you, the surgery is tomorrow, right? |
|---|---|
| [Jaramillo:] | Yes. |
| [Jaramillo's Atty:] | And what did the doctor tell you about your recovery time. |
| [Jaramillo:] | Three months, basically, I'll be, and then after that, I'll need physical therapy for, I guess to try to help with some of the motion in my arm. |
| [Jaramillo's Atty:] | Had, are you seeing, oh, after you have your, your surgery, what type of mobility will you have in your left shoulder? |
| [Jaramillo:] | Zero. |
| [Jaramillo's Atty:] | It will be fused -- |
| [Jaramillo:] | It will be fused -- |
| [Jaramillo's Atty:] | -- and locked into place? |
| [Jaramillo:] | It's a light job, yes. |

Record at 48-49.  The most that one could properly infer from this testimony is that Jaramillo understood that it would be three months before he could commence physical therapy, which might improve his condition.   The statement does not, however, justify the conclusion that, after three months, the exertional limitations that Dr. Forno imposed could be discarded entirely. Moreover, even if physical therapy were successful -- something about which the ALJ can only speculate -- there is no evidence in the record that physical therapy would restore to Jaramillo the

ability to do light work or any other particular category of work.  Although it is possible that physical therapy might bring about such a result, the record reveals no evidentiary basis for the ALJ's speculation that it would necessarily bring about that result.  Further, the ALJ had a mechanism available to explore Dr. Forno's opinion more thoroughly: he could, and indeed should, have contacted Dr. Forno for more information.   See Robinson v. Barnhart, 366 F.3d at 1084 ("If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available.").

Moreover, the ALJ inadequately compared Dr. Forno's opinion with Dr. Nickerson's opinion.  The ALJ substantially relied on the July 30, 2008, opinion of Dr. Nickerson -- a State agency nonexamining medical consultant.   See Record at 19 (citing Physical RFC Assessment, dated July 30, 2008, filed March 20, 2012 (Doc. 17-10)).  The ALJ's rejection of a treating physician's opinion and adoption of a nonexamining consultant's opinion is atypical.   As the Tenth Circuit has explained:

> "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003)(quoting 20 C.F.R. § 416.927(d)(2)). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); Soc. Sec. R. 96–6p, 1996 WL 374180, at *2.

Robinson v. Barnhart, 366 F.3d at 1084.   In Robinson v. Barnhart, the Tenth Circuit found that an ALJ erred by rejecting a treating physician's testimony and adopted a nonexamining, consulting physician's opinion "absent a legally sufficient explanation for doing so."   366 F.3d at 1084.

The ALJ, likewise, did not articulate a legally sufficient explanation for rejecting Dr. Forno's opinion in favor of Dr. Nickerson's opinion, but instead based his rejection of Dr. Forno's testimony on his lay opinion and speculation. Accordingly, the Court concludes that the ALJ improperly analyzed Dr. Forno's opinion.

## II.    <u>THE ALJ'S ERROR WAS NOT HARMLESS.</u>

The ALJ's incorrect analysis was not, as the Defendants maintain, harmless. A reasonable factfinder who correctly analyzed Dr. Forno's opinion could have concluded that Jaramillo cannot perform the jobs that the ALJ identified. The Court will, therefore, remand the case for further proceedings.

The Defendant does not defend the ALJ's analysis, but instead suggests that any error was harmless. <u>See</u> Objections to PFRD at 2. In the Defendant's view, even if one were to credit Jaramillo's treating surgeon's opinion of Jaramillo's lifting capacity, Jaramillo still could, as the ALJ concluded, do light work. <u>See</u> Objections to PFRD at 2. The Defendant asserts that, under the relevant regulations, a job is a "light job"

> if 1) it involves standing most of the day, and lifting up to 20 pounds; 2) involves standing most of the day and lifting less than 10 pounds; or 3) involves sitting most of the day using arm and/or leg controls. The only scenario for a sedentary job is lifting no more than 10 pounds and sitting most of the workday. <u>See</u> 20 C.F.R. §§ 404.1567(a)&(b), 416.967(a)&(b); Soc. Sec. Rul. 83-10. In fact, the primary difference between sedentary and most light jobs is the fact that most light jobs require a good deal of walking or standing. <u>See</u> Soc. Sec. Rul. 83-10.

Objections to PFRD at 1-2. The Defendant points out that Hardin testified that Jaramillo

> could perform the jobs of conveyor line bakery worker (45,000 positions in nation), counter clerk (30,000 positions in nation), and tanning salon attendant (80,000 positions nationally) (Tr. 20, 51-54). The Vocational Expert testified that the conveyor belt job would involve lifting the weight of a loaf of bread as it is more of a quality control job (Tr. 53), and that the tanning salon attendant would lift a spray bottle used to spray the tanning beds before wiping them down (Tr. 54). Thus, at

> the very least, [Jaramillo] can perform these two jobs even if Dr. Forno's lifting
> restriction to less than 10 pounds was controlling.

Objections to PFRD at 2-3.   In the Defendant's view, even if the ALJ were to accept Dr. Forno's

conclusion that Jaramillo should not lift more than ten pounds, Jaramillo is, nevertheless, able to

perform the jobs that the Vocational Expert identified: because "Dr. Forno opined [that Jaramillo]

could perform the sitting, standing and/or walking requirements of the enumerated light jobs," if

Jaramillo "can perform the lifting requirements of the identified jobs, the Court should find that

Dr. Forno's opinion does not create reversible error."   Objections to PFRD at 2.   The Defendant

suggests that any error that the ALJ committed was, therefore, harmless.   See Objections to PFRD

at 2.

> The Tenth Circuit has explained that

> the harmless-error doctrine applies in social security cases "where, based on the
> material the ALJ did at least consider (just not properly), we could confidently say
> that no reasonable administrative factfinder, following the correct analysis, could
> have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d
> 1140, 1145 (10th Cir. 2004).

Anderson v. Colvin, 514 F. App'x 756, 757 (10th Cir. 2013)(unpublished).   As applied in the

Social Security context, the harmless-error doctrine takes into account considerations unique to the

review of agency decisions:

> Two considerations counsel a cautious, if not skeptical, reception to [the
> principle of harmless error in the disability context].   First, if too liberally
> embraced, it could obscure the important institutional boundary preserved by
> [Drapeau v. Massanari's] admonition that courts avoid usurping the administrative
> tribunal's responsibility to find the facts.   Second, to the extent a harmless-error
> determination rests on legal or evidentiary matters not considered by the ALJ, it
> risks violating the general rule against post hoc justification of administrative
> action recognized in SEC v. Chenery Corp., 318 U.S. 80 . . . (1943) and its
> progeny.

> With these caveats, it nevertheless may be appropriate to supply a missing

dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

Allen v. Barnhart, 357 F.3d at 1145.

With the Tenth Circuit's deferential standard in mind, the Court will remand the case for further proceedings, because this case is not the exceptional circumstance where it can confidently say that no reasonable factfinder, applying the correct standard, would have resolved the factual issue differently.   The Court is mindful that the duty to weigh the evidence belongs to the ALJ, and the Court will not usurp that duty.   The Court cannot, however, confidently say that the ALJ, evaluating the factors that the Tenth Circuit has identified, see Drapeau v. Massanari, 255 F.3d at 1213, would not lead the ALJ to give greater weight to the testimony of Dr. Forno -- who performed surgery on the part of Jaramillo's body at the center of his disability claim.[9]   If the ALJ had applied the correct standard to Dr. Forno's opinion, it might have given it more weight and might, in turn, have determined that Jaramillo cannot do the jobs that the ALJ identified.

Dr. Forno's exertional limitations would limit Jaramillo to sedentary work and not light work.   To put his opinion in context, it is useful to consider how the relevant Social Security regulations work.   Those regulations discuss the capability to work at various physical exertion levels.   See 20 C.F.R. § 404.967; 20 C.F.R. § 404.1567.   Both the regulations and an appendix

---

[9]Moreover, it is not evident that Dr. Forno's opinion conflicts with Dr. Nickerson's opinion.   Dr. Nickerson's July, 2008, opinion cannot incorporate any changes to Jaramillo's condition after that time -- the most significant of which being Dr. Forno's May, 2010, shoulder surgery.   That Dr. Forno's opinion of Jaramillo's RFC differs from Dr. Nickerson's opinion may, therefore, reflect more than the fact that Dr. Forno treated Jaramillo while Dr. Nickerson did not examine him, let alone treat him; it may reflect that Jaramillo's condition changed after Dr. Nickerson saw him, either before Jaramillo's surgery or because of it.   It is for the ALJ to determine this fact's significance.

that accompanies them identify "maximum sustained work capability" at listed levels: sedentary work, light work, medium work, heavy work, and very heavy work.   See 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2.   A Social Security policy statement interpreting the regulations explains: "Under each rule, the capability considered is limited to that necessary to perform sustained work on a regular basis at the particular level of exertion."   SSR 83-10, 1983 WL 31251, *2.

The regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.967(a) (emphasis added); 20 C.F.R. § 404.1567(a) (emphasis added).   The policy statement elaborates on this definition as follows: "By its very nature, work performed primarily in a seated position entails no significant stooping.   Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.   'Occasionally' means occurring from very little up to one-third of the time."   SSR 83-10, 1983 WL 31251, *5.   The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.967(b) (emphasis added); 20 C.F.R. § 404.1567(a) (emphasis added).   The same

policy statement elaborates on this definition as well:

> Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. <u>A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work</u>; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator . . . .

> "Frequent" means occurring from one-third to two-thirds of the time.

SSR 83-10, 1983 WL 31251, *5-6 (emphasis added).

With that backdrop, the significance of Dr. Forno's exertional limitations becomes clear. In Dr. Forno's view, Jaramillo may occasionally or frequently lift or carry "[l]ess than 10 pounds," but he may not lift ten pounds or more than ten pounds, either occasionally or frequently.   Record at 349.   That the form on which Dr. Forno recorded his opinion includes a separate option for "10 pounds," Record at 349, which Dr. Forno did not select, reinforces this conclusion.   Moreover, the form indicates that Jaramillo's ability to push or pull is "[l]imited in upper extremities," Record at 349; the form does not indicate a particular weight he may push or pull.   Social Security regulations state that, "[t]o be considered capable of performing a full or wide range of light work, you must have the ability to do substantially <u>all of the[] activities</u>" listed -- namely, (i) lifting no more than twenty pounds at a time; (ii) frequently lifting or carrying objects weighing up to ten pounds; (iii) walking or standing a good deal; and (iv) pushing and pulling arm or leg controls.   20 C.F.R. § 404.967(b) (emphasis added); 20 C.F.R. § 404.1567(a) (emphasis added).   Dr. Forno's limitations would prevent Jaramillo from doing at least two out of the four activities listed: because Dr. Forno's limitations would prevent Jaramillo from lifting ten pounds, if the ALJ were to credit those limitations, Jaramillo would not be permitted to lift "no more than 20 pounds at a time" --

i.e., objects weighing up to and including twenty pounds -- or to frequently lift or carry "objects weighing up to 10 pounds" -- i.e., objects weighing up to and, presumably, including ten pounds. 20 C.F.R. § 404.967(b); 20 C.F.R. § 404.1567(a).   For the same reason, Dr. Forno's limitations might also prevent Jaramillo from doing a third listed activity: the policy statement indicates that the arm-hand or leg-foot controls that one must be able to use "require greater exertion than in sedentary work.   SSR 83-10, 1983 WL 31251, *5.   Regardless, were the ALJ to credit Dr. Forno's testimony, because Jaramillo would lack the ability to lift "no more than twenty pounds at a time," he cannot do "substantially all of the[] activities" listed.

The Defendant contends that Hardin's testimony shows that Jaramillo could perform the jobs of conveyor-line bakery worker, counter clerk, and tanning salon attendant – all of which require the capacity to do "light work" and not "sedentary work" -- because they have lifting requirements of less than 10 pounds.   The argument has incorrect premises.   First, it is worth noting Hardin's testimony that, if Jaramillo's were limited to sedentary work, he could not do any of these jobs.   See Hearing Tr. at 52.   The ALJ's opinion recognizes Hardin's conclusion: in the ALJ's words, "[i]n response to further questioning, the expert stated the same hypothetical individual who was limited to sedentary work would not be able to perform any of the identified jobs."   Hearing Tr. at 20.   Dr. Forno's assessment of Jaramillo's exertional capacity with respect to lifting, if credited, would limit Jaramillo to sedentary work; if the ALJ were to credit Dr. Forno's assessment, therefore, under Hardin's testimony, Jaramillo could not perform the jobs of conveyor-line bakery worker, counter clerk, or tanning salon attendant.

Moreover, the ALJ's decision does not support the Defendant's argument that, because the light jobs that Hardin identified only require a sedentary lifting capacity, Jaramillo could perform

those jobs.   The Court begins with the conveyor-belt bakery worker position.   It is true, as the Defendant points out, that Hardin testified that the conveyor-belt bakery worker job "would involve lifting the weight of a loaf of bread as it is more of a quality control job."   Hearing Tr. at 53.   Hardin's description of the position is, however, in tension with the Dictionary of Occupational Titles.   The Dictionary of Occupational titles says that a conveyor-line bakery worker has a "light" strength rating.   U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed.     1991),     Processing     Occupations,     available     at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05C.HTM   (emphasis     added). Hardin's testimony that the conveyor-belt bakery worker position requires only that one lift "the weight of a loaf of bread" is, therefore, in conflict with the Dictionary of Occupational Titles' strength rating.

Moreover, Hardin described the position in an overly reductive fashion.   The Dictionary of Occupational Titles describes it as follows:

> Performs any combination of following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing.   Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins.   Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product.   Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting.   Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance.   Notifies supervisor of malfunctions.

U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), Processing Occupations, available  at  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05C.HTM (emphasis added).   Hardin's description is, therefore, in tension with the Dictionary of Occupational Titles'

more comprehensive definition of the position.   The Tenth Circuit has held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."   Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1991).   See SSR 00-4p, 2000 WL 1898704, *2 (S.S.A.)("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.").    The ALJ did not, however, explain these inconsistencies; in fact, he did not acknowledge the inconsistency, but instead found that Hardin's "testimony is consistent with the information contained in the Dictionary of Occupational Titles," Record at 20, without further analysis.   The law requires the ALJ to more thoroughly analyze the tension between the Dictionary of Occupational Titles' description of the job and Hardin's description.

Second, the Defendant asserts that the tanning salon attendant position would require only lifting a "spray bottle used to spray the tanning beds before wiping them down."   Objections to PFRD at 3. When questioned about the lifting requirements for a tanning salon attendant, however, Hardin testified as follows:

| | |
|---|---|
| [Jaramillo's Atty:] | What does the tanning salon attendant do? . . .  Does it require lifting? |
| | . . . |
| [Hardin:] | The heaviest thing that would typically be lifted would be the spritz bottle with the spray that you spray down the beds and then wipe down the beds, everything.   Other than, other that, you're looking at bottle of tanning lotion. . . . |
| [Jaramillo's Atty:] | What about cases of tanning . . . lotion? |

| | |
|---|---|
| [Hardin:] | That's possible.   It's, it does have a 20 pound lifting limit for the job, so that depends upon if the owner is the one that's unloading the truck. |
| [Jaramillo's Atty:] | Oh, it has -- |
| [Hardin:] | Or the -- |
| [Jaramillo's Atty:] | -- 20 pounds that you have -- |
| [Hardin:] | It's light. |
| [Jaramillo's Atty:] | -- to be able to lift. |
| [Hardin:] | It's a light job, yes. |

Record at 54-55.   Accordingly, the Defendant's assertion that a tanning salon attendant is required to lift only a spray bottle does not incorporate the full context of Hardin's testimony. Moreover, it does not recognize that the tanning salon job is also categorized as light duty work -- work which, if the ALJ were to credit Dr. Forno's opinion, Jaramillo's exertional limitations would preclude him from doing.

Third, the Defendant fails to provide any testimony or evidence to support that, despite Dr. Forno's limitations, Jaramillo could perform the "light work" position of a counter clerk.  See Objections to PFRD at 2-3. To the contrary, Hardin stated that, if Jaramillo were limited to sedentary work -- as Dr. Forno's limitations would require -- he could not work in such a position. See Hearing Tr. at 52.

The Defendant relies on Keyes-Zachary v. Astrue, 695 F.3d 1156 (10th Cir. 2012), to suggest that the ALJ's failure to evaluate Jaramillo's treating physician testimony is harmless error.   In Keyes-Zachary v. Astrue, the plaintiff alleged, among other things, that the ALJ had not properly weighed five medical opinions in her file.  See 695 F.3d at 1161.   The Tenth

Circuit determined that plaintiff had failed to identify any inconsistencies either among the "nonweighed" medical opinions and the opinions relied upon which the ALJ relied in determining her RFC.  Keyes-Zachary v. Astrue, 695 F.3d at 1162.   Accordingly, the Tenth Circuit held that any error by the ALJ in failing to state what weight the ALJ assigned to each medical opinion was harmless.  See Keyes-Zachary v. Astrue, 695 F.3d at 1162-1165.

The Court disagrees.   As the Court has demonstrated, a harmless-error analysis reveals that a reasonable administrative factfinder, following the correct analysis, could resolve the factual matter in a different way.   See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)(approving harmless-error analysis when, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").   Jaramillo has pointed to a significant inconsistency between his treating physician's functional assessment of his exertional limitations and the functional assessment of the nonexamining medical consultant opinion of Dr. Nickerson, upon which the ALJ relied -- an inconsistency that implicates the residual functional capacity determination that the ALJ made and renders Jaramillo incapable of doing the jobs that Hardin identified and on which the ALJ based his decision.   The ALJ's failure in this case to properly weigh Jaramillo's treating physician medical opinion is not, therefore, harmless error.

Bernal v. Bowen and Frey v. Bowen are not to the contrary.   In Bernal v. Bowen, the Tenth Circuit held that substantial evidence supported an ALJ's rejection of a claimant's treating physician's testimony in the following circumstances:

> Bernal contends that the ALJ failed to give substantial weight to the testimony of his treating physician, Dr. Downey. Dr. Downey's testimony was presented to the ALJ through a four-page deposition taken by claimant's counsel. In this deposition, Dr. Downey briefly described the claimant's medical history and his medication.

The physician noted that Bernal had gained a significant amount of weight since he began taking steroids and that this weight gain would "interfere" with Bernal's ability to perform manual labor. Dr. Downey also testified that Bernal's medication was known to have psychological side effects, including depression and anxiety, and that his patient had related to him "some symptoms . . . consistent with depression." The deposition also noted that symptoms of anger and anxiety had been expressed by Bernal.  In conclusion, Dr. Downey stated that Bernal could not return to his past work in that his asthma would "limit" his ability to do "manual labor, including walking and heavy lifting." Dr. Downey also noted that Bernal needed to avoid working around chemicals and dust.  On this basis, Dr. Downey concluded that Bernal was disabled. (Rec., Vol. II, 228–231.)

We have previously established that the Secretary must give substantial weight to the testimony of the claimant's treating physician, unless good cause is shown to the contrary. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). However, a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.  Id.  In this case, there is substantial evidence in the record to support the ALJ's rejection of Dr. Downey's testimony.  First, Dr. Downey's statements are brief and conclusory at best.  In addition, his statement that Bernal is "disabled, as far as I'm concerned" suffers from lack of foundation; his testimony indicated that Bernal's asthma, allergies and weight gain would "interfere" with his ability to perform manual labor.  However, claimant's inability to perform manual labor does not automatically mean that he is disabled within the meaning of the Social Security Act.  After reviewing the record, the court finds that the ALJ's decision to reject Dr. Downey's cursory testimony is supported by substantial evidence in the record.

Bernal v. Bowen, 851 F.2d at 300-01 (emphasis in original).   Bernal v. Bowen did not hold, as the

Defendant suggests, that opinions are entitled to no weight "because the doctor did not link the

conclusions in the form to the clinical findings by any reasoning or analysis."  Response to

Motion to Remand at 7.   Bernal v. Bowen held that substantial evidence supported the ALJ's

rejection of testimony that is brief, conclusory, and unsupported by medical evidence.  In this

case, Dr. Forno's summary of the operation, which states that, before the operation, Jaramillo

"presented with pain, inability to use the arm.   We discussed shoulder arthrodesis with him and he

agreed to proceed," Record at 347, accompanies his conclusions on the exertional limitations

form.   What weight that testimony deserves is a question for the ALJ on remand; Bernal v. Bowen

does not preclude the ALJ from relying on it.

Frey v. Bowen is also distinguishable.   In that case, a consulting doctor for the Secretary of the Department of Health and Human Services, identified only as "Dr. Gabbert," provided a report suggesting that the claimant had exaggerated the pain he felt.   816 F.2d at 514.   This evidence conflicted with evidence from the claimant's treating physicians.   See 816 F.2d at 514-15.   The Tenth Circuit concluded that the ALJ erred in rejecting the treating physicians' opinions, relying in substantial part on the following line of reasoning:

> Moreover, findings of a nontreating physician based upon limited contact and examination are of suspect reliability. Cf. Broadbent[ v. Harris, 698 F.2d 407, 412-14 (10th Cir. 1983)].   Dr. Gabbert's report in this case appears to be based on the most limited sort of contact and examination. There is no indication of careful study of Frey's history or prior examinations; the report even misstates Frey's name.   In comparison with the objective tests and measurements described by Drs. Warden and Jones in support of their diagnosis of right arm disability, Dr. Gabbert's report in this regard consists solely of boxes checked on the Secretary's form to indicate his conclusion of no limitation on right arm use.   Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.   Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)(residual functional capacity evaluation); Green v. Schweiker, 749 F.2d 1066, 1071 and 1071 n. 3 (3d Cir. 1984)(physical capacities evaluation forms). Such tests of flexibility as Dr. Gabbert did perform in fact supported the diagnosis of progressive disabling disease.

Frey v. Bowen, 816 F.2d at 515.   At first blush, this language seems to indicate that, where a report "consists solely of boxes checked . . . to indicate" a physician's conclusions about a patient's limitations, the report will not, standing alone, constitute substantial evidence.   The Tenth Circuit has not, however, read this language so broadly.   As the Tenth Circuit has more recently explained:

> The Commissioner first argues for a categorical position: the opinions cannot be substantial evidence because these forms were completed without examination findings or treatment notes. Some of these forms do lack such direct explication.   Explanatory material is certainly relevant in deciding the weight a

- 48 -

treating physician's opinion should receive.   See White v. Barnhart, 287 F.3d 903, 907-08 (10th Cir. 2001).   However, we are unwilling to categorically reject forms completed by treating physicians that lack such material.   Although the Commissioner suggests that this categorical rule is required by precedent, we cannot agree that our prior cases dictate such an extensive rule.

The Commissioner would broadly apply our statement in Frey v. Bowen, that "evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." 816 F.2d 508, 515 (10th Cir. 1987).   However, this holding is not as broad as the Commissioner wishes. In Frey, the report "appear[ed] to be based on the most limited sort of contact and examination" with "no indication of careful study of Frey's history or prior examinations."   Id.   In contrast with other doctors' objective tests and measurements, the report at issue in Frey "consist[ed] solely of boxes checked on the Secretary's form to indicate his conclusion of no limitation on right arm use." Id.   In that context, we observed that "findings of a nontreating physician based upon limited contact and examination are of suspect reliability."   Id.   (emphasis added).

The Commissioner would have us construe Frey's holding to include any report primarily consisting of check boxes.   However, to do so here would expand Frey's exclusion of check-box forms beyond those completed by nontreating physicians.   No controlling precedent obliges us to take this path.   See Carpenter v. Astrue, 537 F.3d 1264, 1267 (10th Cir. 2008)(distinguishing Frey in part because there we "dealt with a nontreating physician's checkmarks on the agency's RFC form" (emphasis added)); cf. Hamlin[ v. Barnhart, 365 F.3d   1208, 1223 (10th Cir. 2004)] (applying Frey's rule to an "agency disability determination which listed a non-treating physician's assessment of [claimant's] RFC"); Drapeau v. Massanari, 255 F.3d 1211, 1213-14 (10th Cir. 2001)(applying Frey's rule to a "consultative physician" and other "nontreating physicians who opined that plaintiff's impairments did not meet any listing" without "any supporting explanation whatsoever for their conclusions").   On the facts of this case, we decline to adopt such an expansive interpretation of Frey.

Anderson v. Astrue, 319 F. App'x 712, 723 (10th Cir. 2009)(unpublished).   Frey v. Bowen does

not, therefore, justify the result that the Defendant seeks: the conclusion that the report of a treating

surgeon, completed days after the surgeon performed surgery on the part of the claimant's body

that is central to his disability claim, deserves no weight.   Although the lack of explanatory

material is relevant in deciding the weight that the ALJ should give to Dr. Forno's testimony,

Tenth Circuit precedent does not preclude the ALJ from relying on it.

Separate from that analysis, there is a more fundamental barrier to the Defendant's arguments for affirmance: the ALJ did not rely on them.   In Robinson v. Barnhart, the Tenth Circuit reversed a magistrate judge's decision and explained:

> Claimant also correctly argues that the magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion.  The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.  See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69 . . . (1962).  "Affirming this post hoc effort to salvage the ALJ s decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."  Allen v.Barnhart, 357 F.3d [at 1142].

366 F.3d 1078.  For the same reason, the Court cannot uphold the ALJ's decision for the other reasons that the Defendant has suggested -- principally, that Dr. Forno operated only on Jaramillo's left shoulder and not on his right shoulder, and that Jaramillo might be able to lift twenty pounds occasionally with his right arm.   The ALJ did not rely on that reasoning, and for the Court to affirm the Defendant's "post hoc effort to salvage the ALJ's decision would require [the Court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process."   Allen v. Barnhart, 357 F.3d at 1142.   In the end, the ALJ's failure to apply the Tenth Circuit's treating-physician standard, coupled with the Court's conclusion that a reasonable factfinder who performed the correct analysis could have come out the other way, is sufficient to require remand.

Moreover, the Defendant's suggestion that Judge Torgerson's Proposed Findings and Recommended Disposition did not exercise common sense, and that the Court is insisting on "technical perfection," Objections at 3, is also misplaced.   Insisting that an ALJ correctly evaluate medical opinion evidence in accordance with Tenth Circuit case law and Social Security's

regulations is not insisting on "technical perfection."   It is, after all, the Court's duty, when it reviews an ALJ's determination, to determine whether the correct legal standards were applied. Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).   The ALJ did not apply the correct legal standard in evaluating and weighing treating physician testimony.   That error was not harmless, because a reasonable fact-finder could, if he or she treated Dr. Forno's opinion with the weight owed treating-physician opinions, determine that Jaramillo is ineligible for the positions that the ALJ identified.

The Court notes Jaramillo's second argument in his Response to the Objections to the PFRD: "the ALJ's RFC and hypothetical [to Hardin] are defective because he did **not** incorporate any limitations of record stemming from Mr. Jaramillo's mental impairments." Response to Objections to PFRD at 1 (emphasis in original)(footnote omitted).   The Court need not decide the issue as his Response to Objections to PFRD presents it, because the ALJ's error with respect to Dr. Forno's opinion is sufficient to require remand, and because the PFRD does not touch on this issue.   The Court notes that, to the extent that Jaramillo's argument duplicates his argument in his Reply in Support of Motion to Reverse, the Court substantially disposed of that argument in its Memorandum Opinion and Order Regarding the Magistrate Judge's Report and Recommendation.   See Doc. 33 at 15-17.   To the extent that Jaramillo intends to raise any other argument related to Dr. Logan's opinion, the parties and the ALJ can consider the issue on remand.

Accordingly, the Court will overrule the Defendant's Objections and will adopt the PFRD.

**IT IS ORDERED** that: (i) the Magistrate Judge's Supplemental Proposed Findings and Recommended Disposition, filed November 4, 2013 (Doc. 35), is adopted; and (ii) the Plaintiff

Joseph A. Jaramillo's Motion to Reverse or Remand Administrative Agency Decision, filed May 24, 2012 (Doc. 21), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael D. Armstrong
Albuquerque, New Mexico

      *Attorney for Plaintiff Joseph A. Jaramillo*

Kenneth J. Gonzales
   United States Attorney
Manuel Lucero
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Christopher Carrillo
   Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
Dallas, Texas

      *Attorneys for Defendant Carolyn W. Colvin, Commissioner of the Social Security*
        *Administration*